366 So.2d 1244 (1979)
Robert KRAUSE et al., Appellants,
v.
Janet RENO, As State Attorney, for the Eleventh Judicial Circuit of Florida, and As a Citizen of the State of Florida, and Jim Smith, As Attorney General of the State of Florida, et al., Appellees.
No. 78-539.
District Court of Appeal of Florida, Third District.
February 6, 1979.
*1245 George F. Knox, Jr., City Atty., and Sherman Bennett Mayor, Asst. City Atty., for appellants.
Jim Smith, Atty. Gen., and Frank A. Vickory, Asst. Atty. Gen., Tallahassee, Joseph P. Averill, Paul & Thomson and Dan P.S. Paul, Miami, for appellees.
Before PEARSON, KEHOE and SCHWARTZ, JJ.
KEHOE, Judge.
Appellants, defendants below, bring this appeal from an order dated February 24, 1978, entered by the trial court in favor of appellees, plaintiffs below. Among other things, the order permanently enjoined appellants from holding any meeting for the purpose of screening applications and making recommendations for the position of Chief of Police for the City of Miami unless such meeting is at all times open to the public, properly noticed in advance, and the minutes of such meetings are recorded and promptly opened to public inspection. We affirm.
On February 21, 1978, Janet Reno, State Attorney, filed a complaint for declaratory and injunctive relief against appellants seeking, among other things, to have the trial court declare that any meeting held by appellants to assist the City Manager of the City of Miami in choosing a new police chief was subject to the provisions of Sections 286.011 and 286.012, Florida Statutes (1977), and to permanently enjoin appellants from meeting unless the provisions of Section 286.011 were met, i.e., basically, that any such meeting be open to the public. Thereafter, appellees Miami Herald Publishing Company and Miami Daily News, Inc., after their petitions to intervene were considered by the trial court, were added as additional parties plaintiff in the cause. Subsequently, after memoranda of law were filed by the various parties, the parties entered into a stipulation of facts upon which the cause came on to be heard on the complaint for declaratory and injunctive relief. After the hearing, the trial court entered the order appealed which, in pertinent part, provides as follows:
"THE ABOVE ENTITLED CAUSE came on to be heard before the undersigned Judge on the Complaint for Declaratory and Injunctive Relief filed by the Plaintiffs, and the Answer to said Complaint filed by the Defendants, ROBERT KRAUSE. The parties have stipulated and agreed that this matter may proceed to final determination based on the foregoing pleadings without observing the formality of deferring the *1246 final hearing as provided for pursuant to the Florida Rules of Civil Procedure, and all defendants are before the Court.
"The uncontroverted and stipulated facts are as follows:
"1. This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes, and for a temporary and permanent injunction pursuant to Sections 286.012 and 286.011, Florida Statutes, and the Florida Rules of Civil Procedure, § 1.610.
"2. Plaintiff Janet Reno, is a citizen of the State of Florida and State Attorney of the Eleventh Judicial Circuit and brings this action in the name of the State of Florida; Plaintiff Robert L. Shevin, is the Attorney General for the State of Florida.
"3. Defendant, Robert Krause, and four other persons were selected by the City Manager of the City of Miami to meet together and jointly screen applications, conduct interviews, evaluate candidates, and recommend four or five of the best qualified candidates, which would culminate in his appointment of a Chief of Police for the City of Miami, Florida, and to assist the City Manager in the process of making his final selection of a Police Chief.
"4. The City of Miami is a political subdivision of the State of Florida.
"5. With the exception of the Defendant, Robert Krause, all of the other selected individuals are private citizens and are not staff or personnel in the employ of the City Manager or of the City of Miami.
"6. The foregoing selected individuals were requested by the City Manager to meet together to jointly review the approximately 165 applications for the position of the Chief of Police of the City of Miami; to recommend the elimination of those applicants who did not appear to be sufficiently qualified; to conduct interviews only among the approximately 15 they decided were the best qualified, and to recommend the names of four or five applicants from whom the City Manager may appoint one to the position of Chief of Police of the City of Miami. The travel expenses of seven or eight of the applicants to be interviewed who reside outside of Dade County will be paid from public funds of the City of Miami and the City of Miami is paying the travel expenses of Watkins to return from Tennessee for the February 25, 1978 meeting and providing any necessary secretarial services required by the group. The City Manager has advised the public that it is unlikely that he will appoint anyone as Chief of Police who is not among the persons who are recommended by this group. However, the City Manager has additionally advised the public that based upon his powers as they are enumerated in Section 16 of the Charter of the City of Miami, and Section 43-2 of the Code of the City of Miami, he is not precluded from appointing any individual who, in his judgment, is qualified to occupy the position, notwithstanding any recommendation by the foregoing group.
"7. On February 8, 1978, Defendant Krause, and the selected individuals held a meeting at Miami City Hall at which the City Manager and the City of Miami turned over to them applications which were received by the City of Miami for the position of Chief of Police and the selected individuals began the process of evaluating the applications and narrowed the field of applicants at the February 8th meeting to approximately 15 to 18 candidates for further consideration.
"8. The public was given no notice of this meeting nor was this meeting at any time open to the public. No minutes were kept of this meeting which were made available to the public. Demand to enter this meeting was made by a newspaper reporter, who is a citizen of the State of Florida, and such demand was denied by the City Manager and the foregoing selected individuals.
"9. Defendants intend to hold another meeting on February 25, 1978, of which no formal notice has been given and which will not be open to the public.
The question posed to this Court for determination is as follows:
*1247 "Whether the Defendants composing this advisory group, which was appointed by the City Manager, Joseph Grassie, is subject to the government in the Sunshine Law.
"Application was made by the Miami Daily News, Inc. to intervene as a party plaintiff, and application was made by the Miami Herald to intervene as a party plaintiff and both applications were granted.
"The Court heard and considered the evidence presented, the arguments of the parties as well as the intervenors, reviewed and considered the Memoranda of Law submitted by the parties and the intervenors.
"The plaintiffs rely heavily upon the case of Town of Palm Beach v. Gradison, a Supreme Court of Florida case cited as 296 So.2d 473 to support their position. The defendants direct the Court's attention to the case of Bennett v. Warden, a Second District Court of Appeals case cited at 333 So.2d 97 as the controlling case, as it pertains to the facts at issue. Unfortunately neither case is squarely on point and each case is clearly distinguishable from the case presently at issue before the Court. In the Bennett case `supra' the Second District Court of Appeals found that the president of a junior college, as an executive officer of the College Board of Trustees, was no different from any other executive officer of any other board, agency or commission of government and, as such was neither a `Board' nor a `Commission' so as to require him to comply with the Sunshine Law by opening all of his meetings with the representatives of the career employees of the college; Bennett, as President of St. Petersburg Junior College, periodically met in private with a group of junior college employees, who were designated by him as representatives of the career employees of St. Petersburg Junior College for the purpose of discussing with him various problems and suggestions relating to employees working conditions in general and wages and hours in particular; Bennett was merely the executive officer of the Board of Trustees and was neither a `Board' nor a `Commission' and carried out the directions, orders and policies of the `Board' in the day-to-day administration of the junior college. The Court went on to find that the career employees council at the junior college, members of which were appointed by and served at the pleasure of the President of the College, was far too remote in decision-making process relating to working conditions (underscoring supplied) of career employees of college to be capable of making or formulating policy or crystalizing decisions anywhere near that point and, as such, was not a `council', `committee' or `group' which was bound by the open meeting provision of the Sunshine Law as an alter ego of the College Board of Trustees.
"In the case presently before us the decision-making process of the group appointed by the City Manager to assist him in the selection of a Police Chief is not `too remote' but on the contrary has a direct influence on the decision-making authority that appointed them. In the Town of Palm Beach v. Gradison case `supra' a group of citizens were appointed by the Town Council for the purpose of guiding the planning firm that was employed for the purpose of updating and revising the town zoning ordinances, in their efforts to assure that the plan produced would be consistent with the character, image and land-use controls intended by the citizens. The Court found that this was a buffer lay group of citizens whose function was to serve part-time as the alter egoes of the Town Councilmen to make tentative decisions guiding the zoning planners and advising the council as to their ultimate zoning ordinances and as such were subject to the government in the Sunshine Law. That case is distinguished from the present case in that the City Commission of the City of Miami had no relationship whatsoever with the group that Mr. Grassie selected to assist him in appointing a Chief of Police. Cases involving an interpretation and application of the Florida Sunshine Law have been considered in the Second and Third District Courts of Appeal as well as by the Supreme Court of the State of Florida however, there is no case directly on point and it would appear that an application of the Florida Sunshine Law can be determined somewhere between the *1248 Town of Palm Beach v. Gradison and the Bennett v. Warden cases.
"In order to determine whether or not the defendants are governed by the Florida Sunshine Law it becomes necessary to examine the law itself and determine the intent of the legislature as it applies to the present case.
"The 1967 Session of the Florida Legislature enacted Chapter 67-356, Laws of Florida 1967 which became effective July 1, 1967, and appears in the Florida Statutes as paragraph 286.011, it has appropriately been labeled Florida's `Government In The Sunshine Law'. It provides among other things that `all meetings of any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meetings. The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded and such records shall be open to public inspection. * * *'
"It is apparent that the legislature intended that the `open meeting' concept was intended to bind every `board or commission' of the state. It is also apparent that the legislature intended to include the acts of deliberation, discussion and deciding that occurred prior to and leading up to the affirmative formal action which renders official the final decisions of a governing body. Chief Justice Adkins in his opinion in the Town of Palm Beach v. Gradison case `supra' makes the observation that `every meeting of any board, commission, agency or authority of a municipality should be a marketplace of ideas, so that the governmental agency may have sufficient input from the citizens who are going to be affected by the subsequent action of the municipality. The ordinary taxpayer can no longer be led blindly down the path of government, for the news media, by constantly reporting community affairs, has made the taxpayer aware of government problems. Government, more so now, than ever before, should be responsive to the wishes of the public. These wishes could never be known in nonpublic meetings, and the governmental agencies would be deprived of the benefit of suggestions and ideas which may be advanced by the knowledgeable public. Also, such open meetings instill confidence in government. The taxpayer deserves an opportunity to express his views and have them considered in the decision-making process * * * No governmental board is infallible and it is foolish to assume that those who are elected or appointed to office have any superior knowledge concerning any government problem. Every person (underscoring supplied) charged with the administration of any governmental activity must rely upon suggestions and ideas advanced by other knowledgeable and interested persons. As more people participate in governmental activities, the decision-making process will be improved * * * The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency and relates to any matter on which foreseeable action will be taken.'
"In the instant case the City Manager, who is the Chief Administrative Officer of the City of Miami appointed by the City Council is charged with the responsibility of selecting a Chief of Police for the City of Miami; a matter that is obviously of great import and interest to the public. Mr. Grassie has apparently recognized the wisdom of seeking advice and assistance from a group of citizens appointed by him for the purpose of conducting the screening process and making its recommendations to him for his ultimate and final decision. Mr. Grassie is to be commended for having exercised the good judgment of availing himself of as much input and assistance in connection with this important selection. Having *1249 elected to create this group, which by any other name is nonetheless a `board' and empowering them with the responsibility of screening the applicants for the important post of Police Chief and exercising an elimination process to the point of reducing the number of applicants to four or five which they would then recommend to the City Manager and which would constitute an official act on their part, brings them, in the judgment of this Court, clearly within the provision of Section 286.011 of the Florida Statutes.
"While it may be contended, though it has not been raised in the pleadings presently before the Court, that such public scrutiny may discourage competent and capable applicants from seeking this position, such a risk is outweighed by the advantages of the public being informed by the right to participate as to the background, qualifications, character and all other attributes that may be considered by the group in making its assessment of the applicants for this important position. The public at large is and should be vitally interested in the selection of a Police Chief for the City of Miami and an evaluation, interview and screening of these applicants for this position should be conducted `in the Sunshine'. It is accordingly
CONSIDERED, ORDERED AND ADJUDGED as follows:
"1. That the defendants Gerald Watkins, Johnny Jones, Jeanne Bellamy, Leslie Pantin and Robert Krause be and they are hereby permanently enjoined and restrained from holding, conducting or participating in any meeting wherein public business is discussed or contemplated or transacted or at which official acts are to be taken unless such meetings are at all times open to the public and properly noticed in advance and the minutes of such meetings are recorded and promptly opened to public inspection. That such public business and official acts shall extend to and include, but not be limited to the screening of applications, conducting interviews, evaluating candidates, and recommendations thereof for the position of Chief of Police for the City of Miami.
"2. Each of the defendants, GERALD WATKINS, JOHNNY JONES, JEANNE BELLAMY, LESLIE PANTIN and ROBERT KRAUSE are directed, within ten days from the date of this order to prepare a resume of the proceedings reflecting those matters acted upon at the meeting of February 8, 1978 which minutes shall be promptly made available for public inspection.
"3. The prayer of the Plaintiffs that a declaratory decree declaring that any duly appointed board or committee of the City of Miami which takes official acts or is a step in any official decision-making process is subject to Sections 286.011 and 286.012 of the Florida Statutes be and the same is hereby denied. Until such time as we have the benefit of further appellate review or legislative modification, each situation which has not previously been resolved by prior judicial decision will have to be reviewed on its merit, however, if there is any doubt as to whether such board or committee is governed by Section 286.011 of the Florida Statutes, the members of any such board, agency, authority or commission should follow the open-meeting policy of this state.
"4. That the defendants and any replacements or substitutions appointed in addition to or in substitution of any or either of them are subject to the government in the Sunshine Law and subject to Sections 286.011 and 286.012 of the Florida Statutes.
"5. Jurisdiction of this cause and of the parties hereto are reserved for the purposes of enforcing this order."
Based upon the foregoing, appellants appealed contending that: (1) a permanent injunction should not have been issued to force an advisory group or committee selected by the City Manager, which committee serves under the Manager's direction for the purpose of assisting him in the discharge of a purely administrative duty, to meet within the contemplation of Section 286.011, Florida Statutes (1977) ["Government in the Sunshine Law"]; (2) the City Manager and advisory groups or committees *1250 appointed by him for assistance are not agencies, boards, or commissions within the contemplation of Section 286.011; and (3) the Legislature did not intend for Section 286.011 to be extended to administrative deliberative processes which culminate in the completion of a purely administrative act.
Section 286.011, Florida Statutes (1977), provides:
"(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.
"(2) The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded and such records shall be open to public inspection. The circuit courts of this state shall have jurisdiction to issue injunctions to enforce the purposes of this section upon application by any citizen of this state.
"(3) Any person who is a member of a board or commission or of any state agency or authority of any county, municipal corporation or any political subdivision who violates the provisions of this section by attending a meeting not held in accordance with the provisions hereof is guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083."
The courts of this State have been called upon on frequent occasions to interpret the legislative intent underlying the Sunshine Law. Enacted approximately a decade ago, the Sunshine Law reflects Florida's commitment to openness in government. It is beyond doubt that the Statute is to be construed liberally in favor of open government. The Florida Supreme Court announced in Board of Public Instruction v. Doran, 224 So.2d 693, 699 (Fla. 1969), the principle that "[s]tatutes enacted for the public benefit should be interpreted most favorably to the public." Indicative of this policy is the Florida Supreme Court's pronouncement in City of Miami Beach v. Berns, 245 So.2d 38, 40 (Fla. 1971), that:
"One purpose of the Sunshine Law was to maintain the faith of the public in governmental agencies. Regardless of their good intentions, these specified boards and commissions, through devious ways, should not be allowed to deprive the public of this inalienable right to be present and to be heard at all deliberations wherein decisions affecting the public are being made."
Among the important public aspects to be served by open meetings of governmental bodies are the following: First, there is the citizen input factor. For example, in Town of Palm Beach v. Gradison, 296 So.2d 473, 475 (Fla. 1974), our Supreme Court stated that "[e]very meeting of any board, commission, agency or authority of a municipality should be a marketplace of ideas, so that the governmental agency may have sufficient input from the citizens who are going to be affected by the subsequent action of the municipality." Second, in addition to this need for citizen input, representative government requires that it be responsive to the wishes of the governed, because that is its ultimate source of consent. Third, open meetings produce stability and public confidence in government. Fourth, open meetings reported by the news media insure that our system of government will function as a genuine participatory democracy, i.e., the governed have a right to participate in their government. A fifth interest served by open meetings is the "checking effect" that open meetings have on governmental abuses. Meetings in public facilitate this "checking value." Even if most persons are unable to attend such meetings, they allow the news media to "watchdog" the conduct of public officials. Another interest to be served by open meetings is the public can better evaluate public officials and their projects by *1251 being privy to the decision-making process. Thereby, for example, the public may vote intelligently on retaining officials, restructuring their offices, and approving or rejecting their projects. Also, public access to governmental meetings enables members of the public to understand more completely the decision-making processes of government and thereby consider future governmental developments and the consequences of those developments for their own lives. Although this list is not all inclusive, we believe that it is persuasive of the several important interests to be served in assaying the Legislative intent and in applying the provisions of our Sunshine Law.
The selection of a police chief for the City of Miami affects the security, the lives, and the property of every resident of the City. The City Manager fully realized the significance of this appointment and formulated a "blue ribbon" citizens group to perform much of the work necessary to this task. From the record before us, it certainly appears that the Manager is to be commended for utilizing this method of selection. However, as set forth in the stipulation of facts stated above, the citizens group attempted to perform its part of the decision-making process in closed meetings. We feel that all of the aspects underlying the public's interest in governmental public meetings existed in the instant case; however, even in light of the clear legislative intent in interpreting our Sunshine Law and these attendant interests, this does not answer the primary issue in this appeal, i.e., whether the citizens group meetings were covered by Section 286.011.
Based upon the stipulated facts in this cause and upon the points raised by appellants on appeal, two critical questions present themselves for our determination of whether Section 286.011 is applicable as found by the trial court. For purposes of our discussion, we can summarize these two questions as follows: (1) whether the advisory group was a "board" within the meaning of Section 286.011, and (2) whether when the City Manager opted to utilize the advisory group he placed himself within the definition of "agency" as that term is used in Section 286.011. If, in this case, the answer to both of these questions is affirmative, the trial court's order must be affirmed.
In construing the Sunshine Law, the Florida courts have consistently looked at the substance of a meeting, rather than its form, in determining its nature. Since the decision by the Florida Supreme Court in Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974), there can be no doubt that an advisory board appointed to make recommendations to an appointing authority is subject to the dictates of the Sunshine Law. In that case, the Court based its decision upon the public policy sought to be furthered by the Sunshine Law and stated:
"One purpose of the government in the sunshine law was to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance. Rarely could there be any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed door. The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency, and relates to any matter on which foreseeable action will be taken." Id. at 477.
This case announced the principle that an advisory board appointed by a governmental agency and deliberating on matters upon which foreseeable action might be taken must meet in the open. As shown by the stipulated facts herein, the citizens group undertook an elimination process to narrow down to a select few those applicants whom the City Manager publicly announced he would consider for police chief. Although the Manager was not technically bound to appoint the police chief from the applicants submitted by the advisory group, his announced intention was to do so, and, *1252 in fact, he did. Thus, in this case, the advisory group was an integral part of the decision-making process. In our opinion, once the City Manager utilized the advisory group to assist him, he created a "board" as that term was contemplated in Section 286.011.
The question of whether the City Manager was an "agency" as that term is contemplated by Section 286.011 is one which, in our opinion, must also be answered in the affirmative. The Sunshine Law itself contains no definition of "agency" or "authority." Therefore, this court may look to similar or analogous statutory provisions which give effect to the same public policy underlying the Sunshine Law or which also concern the processes of state and local government. The statute most analogous to the Sunshine Law is Chapter 119, Florida Public Records Law, which also exists to assure openness in and access to government. Section 119.011(2), Florida Statutes (1977), defines "agency" as "... any state, county, district, authority, or municipal officer, department, division, board, bureau, commission or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency." Section 20.03(11), Florida Statutes (1977), of the Government Reorganization Act defines "agency" to include "... an official, officer, commission, authority, council, committee, department, division, bureau, board, section, or another unit or entity of government." Section 120.52(3), Florida Statutes (1977), of the Administrative Procedures Act defines "agency head" as "... the person or collegial body in a department or other governmental unit statutorily responsible for final agency action." In our opinion, considering the definition of the term "agency" as defined in analogous and related statutes and based upon the ordinary dictionary definition of the word, we believe that once the City Manager, as the chief executive officer of the City of Miami, opted to utilize the advisory group, i.e., "board", to directly assist him in the decision-making process to select a new police chief for the City, he placed himself, under these facts, within the definition of the term "agency" as it is used in Section 286.011. Thus, once the City Manager opted to utilize the advisory board, he also opted, at least for this limited purpose, to have himself defined as an "agency" within the contemplation of Section 286.011.
It seems clear from the language of the broadly written Sunshine Law that the Legislature intended to open to the public all meetings of any body over which its authority extends at any time when official acts are to be taken by that body. Here it is uncontested that "official acts" were taken. The meetings of various boards, committees, commissions, etc., existing throughout the State of Florida which are subject to the "dominion and control of the Legislature" are intended to be open to the public. See, e.g., City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971). Obviously, the Legislature's dominion and control extends to any number of such bodies which are considered "executive" and is not limited, as urged by appellants, to those boards, etc., which are appointed by bodies which are "legislative" in nature. Appellants assert that the selection of the police chief is solely within the prerogative and discretion of the City Manager, the City's chief administrative officer, who is by law free from interference by the City's legislative body, i.e., the City Commission, in his decision-making process. From these facts, appellants argue that the board appointed by the City Manager is not within the "dominion and control of the Legislature," i.e., the City Commission, and thus is not subject to the Sunshine Law. We believe that this is a non sequitur; both the City Commission and City Manager are ultimately within the dominion of the Florida Legislature, the legislature contemplated by Section 286.011. Further, the distinction, as urged by appellants, is not found in the Sunshine Law nor has it ever been read into the Law by the courts as determinant of whether a body must meet in the open. In our opinion, it is the fact of the board, not the source of the board, taking official acts which is subject to the Legislature's *1253 "dominion and control" which is determinative. We feel that to interpret the Sunshine Law otherwise would submerge it into a semantical quagmire, thereby thwarting its manifest objective.
For the reasons and based upon the authorities set forth above, we hold that the points raised by appellants on appeal are without merit. Accordingly, the order appealed is affirmed.
Affirmed.