Eugene M. Steinfeld City Attorney Margate
QUESTION:
Does the Sunshine Law require the Civil Service Commission of the City of Margate to conduct its civil service examinations open to the public?
SUMMARY:
Unless and until judicially construed otherwise or legislatively exempted, civil service examinations administered or conducted by the civil service commission of a municipality, both for initial hiring and for promotion, are subject to the Government in the Sunshine Law and thus must be conducted open to the general public.
The civil service examination procedure of the City of Margate is established by s. 16 1/4-42, Margate Municipal Code of Ordinances. Oral examinations are conducted by two civil service commission members and one department head or his designee. Written examinations require the presence of at least two civil service commission members, inclusive of the chief examiner. You stated in your letter that the civil service commission, `in order to protect the privacy of applicants and allow for the orderly conduct of examinations and grading, has always kept oral and written examinations closed to the public.'
Section 286.011(1), F. S., in relevant part, provides:
 All meetings of any board or commission of . . . any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times . . . .
The Government in the Sunshine Law, s. 286.011, F. S., applies to any situation when two or more members of a covered board or commission take any action, or undertake any business, which involves the official duties and responsibilities of that board or commission. See Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (Fla. 1973); Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969); and Krause v. Reno, 366 So.2d 1244 (3 D.C.A. Fla., 1979). The Civil Service Commission of the City of Margate as a commission of the municipality is covered by the Sunshine Law, and any business or examination process or proceedings conducted by two or more members of the civil service commission involving their official duties must be conducted open to the public.
The case of Times Publishing Co. v. Williams, 222 So.2d 470 (2 D.C.A. Fla., 1969), very early in the history of the Sunshine Law established that personnel matters are not exempt from the operation of the law. In Times Publishing Co., the Pinellas County School Board contended that `the public interest is best served in many instances when matters relating tot he hiring of school personnel can be discussed privately in an atmosphere conducive to uninhibited inquiry into such persons' background, qualifications, character, and so forth.' Id. at 474. In response to the appellee school board's contention, the court, at 474, stated:
 Regardless of the wisdom of its position and regardless of good motive on its part, the power or discretion to decide questions of closed meetings for such purposes is no longer the appellee's to exercise. We are certain that the public-at-large is as interested in the good quality of school personnel as is appellee; and it must always be kept in mind that appellee, no less than any other governmental body, is an agency of the public-at-large, and possesses just so much delegated authority and privileges as the public (in this case through the constitutional vehicle of legislation) chooses to give it. The public has chosen to deny any privilege or discretion in appellee and similar governmental bodies to conduct closed meetings.
Cf. Canney v. Board of Public Instruction of Alachua County,supra, in which the Florida Supreme Court held that hearings conducted by a school board to discuss student disciplinary action must be conducted open to the public.
This office similarly, in a number of situations even more factually close to the circumstances of your inquiry, has uniformly ruled that the Sunshine Law was applicable and the subject mettings and deliberations must be conducted open to the public. In AGO 077-132, this office stated that the Brevard County Personnel Council may not deliberate privately concerning employee disciplinary action. In AGO 075-307, it was concluded that the Florida Barbers' Sanitary Commission may not prohibit the general public from attending the state barber examinations. In AGO 073-370, this office advised that the Sunshine Law requires that the Civil Service Board for the City of Pensacola hold disciplinary hearings on the guilt or innocence of an employee open to the public. See also AGO's 076-225, 075-37, and 071-389.Compare s. 119.07(2), F. S., and s. 5, Ch. 79-36, Laws of Florida, which provide an exemption from Ch. 119 for examination questions and answer sheets of governmental agencies.
You stated in your letter of inquiry that the civil service commission keeps the examinations closed to the public `in order to protect the privacy of applicants,' among other reasons. There has been in recent years an evolution towards greater judicial recognition of the right of privacy under both the Federal and Florida Constitutions. See, for discussion, To Be Let Alone:Florida's Proposed Right of Pirvacy, 6 F.S.U. L. Rev. 671 (1978). A recent case, Byron, Harless, Schaffer, Reid Associates, Inc. v. State ex rel. Schellenberg, 360 So.2d 83 (1 D.C.A. Fla., 1978),cert. granted, Nos. 54,405 and 54,406 (Oct. 19, 1978), recognized a right of privacy in the due process clause of the State Constitution. However, the Florida Supreme Court in In re
Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 at 779 (Fla. 1979), stated that `there is no express guarantee of a right of privacy contained in the Constitution of Florida, nor has any suchconstitutionally guaranteed right yet been found to exist throughimplication.' (Emphasis supplied.) In Schellenberg, the First District Court of Appeal held that Florida had no compelling or overriding interest in exposing, for edification of the public, highly personal and intimate information collected by a Jacksonville psychological consulting firm from applicants for managing director of a public electrical utility, and therefore the information was not subject to the inspection requirements of the Public Records Law. The court described the information as consisting of `intimate feelings' and `intimate relationship,' and further noted that `[t]he portraits are based on the prospects' own statements, induced by a promise of confidentiality, which reveal personal characteristics, relationships, thoughts, beliefs and aspirations.' Id. at 90. `Much of the information recorded was highly personal and sensitive, and public revelation of it would be `offensive and objectionable to a reasonable man of ordinary sensibilities." Id. at 95. The court, amplifying the basis of its holding, stated:
 Intimate relationships are not protected because those relationships are constitutional norms of life, but because they involve `matters so fundamentally affecting a person' that government intrusion tends to debase personhood. Intimate relationships are not themselves the core of the right of privacy, either in its aspect of decisional autonomy or that of disclosural privacy. At the core is the inviolability of personhood. . . . [Id. at 91-92.]
Certiorari has been granted by the Florida Supreme Court inSchellenberg but, as of this writing, the case is still pending. Another case, Tolar v. School Board of Liberty County,363 So.2d 144 (1 D.C.A. Fla., 1978), citing to Schellenberg, recognized that constitutional right-of-privacy considerations under certain factual circumstances could be applicable to personnel hearings otherwise subject to the state's Government in the Sunshine Law, s. 286.011, F. S.
However, the circumstances which move the First District Court of Appeal to hold that the very personal and intimate information gathered in Schellenberg was exempt from the disclosure requirements of the Public Records Law do not seem to be present in the instant case. The examinations given by the Civil Service Commission of the City of Margate appear to be objective and directly related to the examinee's job competence. InSchellenberg, the disclosures were made under a promise of confidentiality and consisted of the most deeply personal and intimate information about the applicants which did not have even an arguable relationship to the applicant's ability to manage a public utility.
I conclude that, unless and until judicially construed otherwise or legislatively exempted, civil service examinations administered or conducted by the civil service commission of a municipality, both for initial hiring and for promotion, are subject to the Government in the Sunshine Law and thus must be conducted open to the general public.
Prepared by:
Craig B. Willis Assistant Attorney General