Mr. Philip E. Perrey City Attorney City of Anna Maria 111 Third Avenue West Post Office Box 9480 Bradenton, Florida 33506
Dear Mr. Perrey:
This is in response to your request for an opinion on substantially the following question:
 DOES s 206.605(3), F.S., AUTHORIZE THE CITY OF ANNA MARIA TO USE FUNDS DERIVED FROM THE ADDITIONAL EIGHTH-CENT TAX ON MOTOR FUEL FOR CHANNEL MAINTENANCE DREDGING OF NAVIGABLE WATERWAYS WITHIN THE CITY LIMITS?
Your letter of inquiry states that there are numerous waterways, both natural and man-made, located within the city limits which connect to Tampa Bay and Anna Maria Sound. A supplemental letter from the Mayor of the City of Anna Maria states the main concern of the city is channel maintenance dredging of the "main entrance" or "main inlet channel to Tampa Bay." No information has been furnished this office and we are not advised as to the ownership of or the status of the title to these waterways, or the bottoms thereof. This office cannot adjudicate or determine property rights in or title to these waterways or bottom lands and such matters are judicial questions to be determined by the courts. Presumably, the ownership of and title to the "main inlet channel" and the "natural" waterways or the submerged bottoms thereof are vested in the state, and the "man-made" waterways or the bottoms thereof are owned by and title thereto held by private parties. For purposes of this opinion, it is presumed that the City of Anna Maria does not own or possess any property rights or title to or interest in any of the described waterways and submerged bottoms, nor own, maintain or operate any ferry, ferry slips, water terminals or port facilities as part of an established public transportation system operated in and upon the waterways in question.
Section 206.605, F.S., imposes the additional eighth-cent tax on motor fuel the proceeds of which are transferred to the Revenue Sharing Trust Fund for Municipalities, created and established by s 218.215(2), F.S. See also, ss 218.23 and 218.26, F.S., prescribing the distribution of revenue to the municipalities from this fund. Subsection (3) of s 206.605 in relevant part, directs that "[f]unds available under this section shall be used only for purchase of transportation facilities and road and street rights-of-way, . . . maintenance of roads and streets; . . . and the construction, . . . maintenance, and operation of transportation facilities." (e.s.) Compare, s 206.60(2)(b)1., F.S., which directs that the counties use the proceeds of the additional seventh-cent tax on motor fuel solely for "the acquisition of rights-of-way; the construction, reconstruction, operation, maintenance, and repair of transportation facilities, roads, and bridges," or for the reduction of bonded indebtedness of the county or of special road and bridge districts within such county, incurred for road and bridge or other transportation purposes.
Your letter suggests that these waterways are "public thoroughfares." Absent the city's ownership of any property rights or interests in or title to these waterways or the bottoms thereof, and any clear and express legislation direction, I am not able to say that the same constitute municipal roads and streets or street rights-of-way or that dredging them to maintain them at navigable depths constitutes the maintenance of city roads and streets or street rights-of-way within the meaning of s206.605(3), F.S. You further suggest that such waterways are "transportation facilities" within the context of s 206.605(3), F.S. The term is nowhere defined in s 206.605, F.S., or Ch. 206, F.S. Therefore, definitions of the term or similar terms in related statutes concerning public transportation may be looked to and read with s 206.605 to glean the meaning of the term "transportation facilities." See, Krause v. Reno, 366 So.2d 1244,1252 (3 D.C.A.Fla., 1979); Goldstein v. Acme Concrete Corporation,103 So.2d 202, 204 (Fla. 1958); cf., Bedenbaugh v. Adams,88 So.2d 765 (Fla. 1956). The term is defined in the Florida Transportation Code, Chapters 334-339 and 341, F.S., to mean "the property or property rights, both real and personal, of a type used for the establishment of public transportation systems which have heretofore or may hereafter be established by public bodies for the transportation of people and property from place to place." Section 334.021(4)(c), F.S. This definition is consistent and harmonious with the ordinary dictionary definition of the term "facility" as "something designed, built, installed, etc., to serve a specific function affording a convenience or service: transportation facilities." The Random House Dictionary of the English Language 509 (1967). Accord, Black's Law Dictionary 705 (Rev. 4th ed. 1968). As stated in AGO 76-223, s 206.605(3), F.S., read with s 334.021(4)(c), generally contemplates the purchase of property or property rights for use for and in connection with the establishment of public transportation systems such as ferries, ferry slips, port facilities and air, water, rail and bus terminals, bridges, tunnels and parking facilities, and the construction, maintenance and operation of such capital projects or systems. It has not been made evident that the city has acquired or purchased, built, installed, established, maintained or operated any such properties or facilities in connection with a municipal establishment of any such public transportation systems for the transportation of people and property from place to place. Section 206.605(3), F.S., does not explicitly authorize or provide for the use or expenditure of the funds derived from the additional eighth-cent tax on motor fuel for channel maintenance dredging of navigable waterways or the bottoms thereof owned by the state or private individuals or entities. This office does not have the authority, under the guise of construction, to imply or write any such authorization or provision into the statute. Cf., Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952). In the absence of any clear and specific authority therefor in s206.605(3), I cannot say that the statute empowers the *3159 city to use the tax funds in question for channel maintenance dredging of navigable waterways or the bottoms thereof within the city limits. The well-established rule of statutory construction, expressio unius est exclusio alterius, is applicable to this statute and means the express mention of one or more things implies the exclusion of all others. When a statute enumerates the things upon which it is to operate, it is to be construed as excluding from its operating all things not expressly mentioned. See, Thayer v. State, 335 So.2d 815 (Fla. 1976); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944).
Based upon the foregoing considerations and until and unless clarified by the Legislature or judicially determined otherwise, it is therefore my opinion that under the limitations and provisions of s 206.605(3), F.S., the City of Anna Maria is not authorized to use the funds derived from the additional eighth-cent tax on motor fuel for channel maintenance dredging of navigable waterways located within the municipality.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General