Dear Mr. McIntyre:
As County Attorney for St. Lucie County, you have requested my opinion on substantially the following question:
Does section 171.209, Florida Statutes, authorize a county and an affected municipality to enter into an "Interlocal Service Boundary Agreement" which would make the county responsible for issuing development and building permits and providing inspection services within a delineated service area within the boundaries of the municipality?
In sum:
The Interlocal Service Boundary Agreement Act, Part II, Chapter 171, Florida Statutes, may not be utilized by a county to retain the authority for issuing development and building permits and providing inspection services within a delineated service area within the boundaries of a municipality.
According to your letter, the City of Ft. Pierce seeks to annex several parcels of land in St. Lucie County. Included in these parcels is a research and education park that is operated by a research and development authority created by the county pursuant to section 159.703, Florida Statutes. You state that the park is a significant asset to the county's future economic development program. Some of the land within the park is owned by the county. St. Lucie County would consider consenting to the annexations if it were legally able to retain the authority to issue development and building permits and provide inspection services for the research and education park in the event that some or all of the park parcels are annexed into the city. The city and the county are in the process of negotiating an interlocal service boundary agreement pursuant to Part II, Chapter 171, Florida Statutes, and you advise that resolution of this question is central to effecting an agreement.
The Florida Constitution provides that
"[b]y law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law."[1]
In recognition of its authority to "provide by law" for the transfer of functions or powers of local governments under this constitutional provision, the Florida Legislature has adopted a number of statutory provisions authorizing the transfer of various powers between and among counties, municipalities, and special districts.[2] This authority does not represent a grant of home rule powers to local governments but is extended to them through Article VIII, section 4, Florida Constitution, and must be exercised in a manner that accomplishes the constitutional and statutory purpose.[3] Among these statutory grants of power is Part II, Chapter 171, Florida Statutes, the "Interlocal Service Boundary Agreement Act."[4]
The Legislature created the "Interlocal Service Boundary Agreement Act" in 2006 as an alternative to the municipal annexation or contraction provisions contained in Part I of Chapter 171, Florida Statutes.[5] As is specifically provided in section 171.201, Florida Statutes:
"The Legislature intends to provide an alternative to part I of this chapter for local governments regarding the annexation of territory into a municipality and the subtraction of territory from the unincorporated area of the county. The principal goal of this part is to encourage local governments to jointly determine how to provide services to residents and property in the most efficient and effective manner while balancing the needs and desires of the community. This part is intended to establish a more flexible process for adjusting municipal boundaries and to address a wider range of the effects of annexation. This part is intended to encourage intergovernmental coordination in planning, service delivery, and boundary adjustments and to reduce intergovernmental conflicts and litigation between local governments. It is the intent of this part to promote sensible boundaries that reduce the costs of local governments, avoid duplicating local services, and increase political transparency and accountability. This part is intended to prevent inefficient service delivery and an insufficient tax base to support the delivery of those services."[6]
As the staff analysis for the bill creating the act makes clear, the purpose of the bill was "to provide an alternative process for annexation that allows counties and municipalities to negotiate in good faith to identify municipal service areas and unincorporated service areas, resolve which local government is responsible for providing services and facilities within the municipal service areas, and reduce the number of enclaves."[7]
Section 171.203(6), Florida Statutes, outlines the issues to be addressed in an interlocal service boundary agreement by stating that such an agreement may address "any issue concerning service delivery, fiscal responsibilities, or boundary adjustment."[8] An interlocal service boundary agreement may include, but is not limited to, provisions that:
"(a) Identify a municipal service area.
(b) Identify an unincorporated service area.
(c) Identify the local government responsible for the delivery or funding of the following services within the municipal service area or the unincorporated service area:
1. Public safety.
2. Fire, emergency rescue, and medical.
3. Water and wastewater.
4. Road ownership, construction, and maintenance.
5. Conservation, parks, and recreation.
6. Stormwater management and drainage."
The statute provides that an agreement may also address other issues concerning service delivery "including the transfer of services and infrastructure and the fiscal compensation to one county, municipality, or independent special district from another county, municipality, or independent special district."[9] The statute authorizes an interlocal service boundary agreement to "[p]rovide for the joint use of facilities and the colocation of services."[10]
With regard to a county's authority to provide services within a municipality, section 171.209, Florida Statutes, specifically ties exercise of this power to the terms of the relevant interlocal service boundary agreement:
"As provided in an interlocal service boundary agreement, this part authorizes a county to exercise powers within a municipality that include, but are not limited to, the authority to provide services and facilities within the territory of a municipality. These powers are in addition to other county powers that otherwise exist.[11]
Thus, while the language of section 171.209, Florida Statutes, is broad, it must be read together with related provisions of the act and legislative history relating to enactment to determine the scope of the powers that may be exercised by a county pursuant to the statute.[12] The terms of the statute limit the extent of such powers to those which may be included within the scope of Part II, Chapter 171, Florida Statutes, i.e., powers regarding any issue concerning service delivery, fiscal responsibility, or boundary adjustments.
Nothing in Part II, Chapter 171, Florida Statutes, specifically defines the term "service" or "services" for purposes of the "Interlocal Service Boundary Agreement Act." Section 171.203(6), Florida Statutes, authorizes the inclusion of a provision in the agreement designating the local governmental entity to be responsible for delivering or funding of specifically identified public safety services; fire, emergency rescue, and medical services; water and wastewater services; road ownership, construction, and maintenance services; conservation, parks, and recreation services and facilities; and stormwater management and drainage services and facilities. While the statute contains expansive language relating to what may be included in an Interlocal Service Boundary Agreement, nothing in section 171.203(6), Florida Statutes, indicates that enforcement of land development regulations and building inspection and permitting responsibilities would be considered "services" within the scope of an Interlocal Service Boundary Agreement.
A provision of Chapter 125, Florida Statutes, entitled "[c]ounty may contract to provide services to municipalities and special districts" may be helpful in delineating what may constitute a "service" within the contemplation of the Legislature.[13] Section 125.0101, Florida Statutes, provides that
"(1) It is the legislative intent of this act to permit counties to contract for services with municipalities and special districts as provided by s. 4, Art. VIII of the State Constitution.
(2) In addition to the powers enumerated in this chapter, the legislative and governing body of a county shall have the power to contract with a municipality or special district within the county for fire protection, law enforcement, library services and facilities, beach erosion control, recreation services and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, and other essential facilities and municipal services. Such services shall be funded as agreed upon between the county and the municipality or special district. This section shall not be construed to authorize the county to impose any service charge or special assessment or to levy any tax within the municipality or special district, nor shall this section be construed to authorize the creation of a municipal service taxing unit within such area.
(3) Municipalities and special districts are hereby authorized and empowered to enter into service contracts pursuant to this section.
(4) Except as otherwise provided in this section, the powers granted by this section shall not be deemed to be a limitation of powers already existing but shall be deemed to be cumulative.
(5) This section shall not apply to any county operating under a home rule charter adopted pursuant to ss. 10, 11, and 24, Art. VIII of the Constitution of 1885, as preserved by s. 6(e), Art. VIII, of the Constitution of 1968."
The statute provides municipalities, counties, and special districts the authority to enter into service contracts in recognition of the transfer of powers provision of the Florida Constitution.
Nothing in this list or in any other statutory provision relating to "public services" or "public facilities" would lead me to the conclusion that the issuance of development and building permits and the provision of building inspection services should be considered to be "services" that would fall within the scope of Part II, Chapter 171, Florida Statutes.[14] Rather, the term "service" as it is used in the "Interlocal Service Agreement Boundary Act" would appear to relate, as is provided in section 163.3177(2)(h)6.a., Florida Statutes, to service delivery agreements regarding such services and facilities as education, sanitary sewer, public safety, solid waste, drainage, potable water, parks and recreation, and transportation facilities.
Therefore, it is my opinion that the Interlocal Service Boundary Agreement Act may not be utilized by a county to retain responsibility for issuing development and building permits and providing inspection services within a delineated service area within the boundaries of a municipality.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Art. VIII, s. 4, Fla. Const.
[2] See, e.g., s. 125.0101, Fla. Stat., stating that "[i]t is the legislative intent of this act to permit counties to contract for services with municipalities and special districts as provided by s. 4, Art. VIII of the State Constitution;" s. 163.01(7)(g)6., Fla. Stat., providing that "[t]his section is an alternative provision otherwise provided by law as authorized in s. 4, Art. VIII of the State Constitution for any transfer of power . . .;" and s. 171.207, Fla. Stat., providing that Part II, Ch. 171 "is an alternative provision otherwise provided by law, as authorized in s. 4, Art. VIII of the State Constitution, . . ."
[3] Cf. Art. VIII, s. 1(f), Fla. Const., and s. 125.01(1), Fla. Stat., providing that non-charter counties have the power to carry on county government to the extent that they do not act inconsistently with legislative provisions; Ops. Att'y Gen. Fla. 09-28 (2009) (county possesses no home rule powers regarding taxation, but must act in accordance with the terms of the statute), 99-72 (1999) (neither counties nor municipalities have home rule powers with respect to the levy of taxes and exemptions therefrom, but must point to constitutional or statutory authority in exercising taxing power); 90-23 (1990) (city may not provide for the rebate of ad valorem taxes collected on newly annexed property, in the absence of constitutional or statutory authority allowing such action); 87-45 (1987); and 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).
[4] See s. 171.207, Fla. Stat., providing:
"This part is an alternative provision otherwise provided by law, as authorized in s. 4, Art. VIII of the State Constitution, for any transfer of power resulting from an interlocal service boundary agreement for the provision of services or the acquisition of public facilities entered into by a county, municipality, independent special district, or other entity created pursuant to law."
[5] See Ch. 2006-218, Laws of Fla., and statement of legislative intent in s. 171.201, Fla. Stat.
[6] Section 171.201, Fla. Stat.
[7] See Summary, Senate Staff Analysis and Economic Impact Statement on CS/SB 1194, dated April 25, 2006.
[8] See 171.203(6), Fla. Stat.
[9] Section 171.203(6)(g), Fla. Stat.
[10] Section 171.203(6)(h), Fla. Stat.
[11] And see s. 171.207, Fla. Stat., providing for any transfer of powers as authorized in s. 4, Art. VIII, Fla. Const., that may be necessary for implementation of a local service boundary agreement.
[12] See, e.g., Nehme v. Smithkline Beecham ClinicalLaboratories, Inc., 863 So. 2d 201 (Fla. 2003) (under statutory construction doctrine of noscitur a sociis, meaning "a word is known by the company it keeps," one examines other words used within a string of concepts to derive legislature's overall intent);Turnberry Isle Resort and Club v. Fernandez,666 So. 2d 254 (Fla. 3d DCA 1996) (under doctrine of "noscitur a sociis" meaning of statutory terms and legislative intent behind them may be discovered by referring to words associated with them in statute).
[13] See Krause v. Reno, 366 So. 2d 1244 (Fla. 3d DCA 1979) (lack of definition for "agency" in Sunshine Law, s. 286.011, Fla. Stat., allows court to look to similar or analogous statutory provisions which give effect to the same public policy underlying the Sunshine Law.); Op. Att'y Gen. Fla. 95-14 (1995) (definitions of terms in related statutes may be reviewed to determine meaning).
[14] See ss. 125.0101, Fla. Stat., 163.3164(33)(d), Fla. Stat., providing definitions an including "water, wastewater, transportation, schools, and recreation facilities" within a list of public services; s. 163.3164(24), Fla. Stat., defining "[p]ublic facilities" to mean "major capital improvements, including, but not limited to, transportation, sanitary sewer, solid waste, drainage, potable water, educational, parks and recreational, and health systems and facilities[.]"