Dear Mr. King:
You have asked substantially the following question:
Are meetings of a subcommittee of a private not-for-profit economic development council subject to section 286.011, Florida Statutes, the Government in the Sunshine Law?
In sum:
Meetings of the subcommittees of the Lake County Economic Development Advisory Council are subject to section 286.011, Florida Statutes, the Government in the Sunshine Law.
According to information submitted to this office, the Economic Development Commission of Mid-Florida (the commission) is a private, non-profit Florida corporation created in 1977. The commission provides information, data, marketing, and advertising services to promote local governments in Central Florida as a location for businesses and economic development opportunities. The county pays the commission one dollar per capita per year based on the population of Lake County for the commission's services.
In 2008, the Lake County Board of County Commissioners passed a resolution acknowledging that the county had been contracting with the commission for specialized economic development services for a number of years and supported the commission for the coordination of the Lake County Economic Development Advisory Council. This council was to be developed to implement the county's economic development strategic plan which was prepared by a consultant company based in Texas under a contract with Lake County. The plan was developed "to provide a realistic vision and roadmap for Lake County to diversify its economy and tax base" and is "a comprehensive set of strategies and an implementation plan to guide future economic development efforts" in the county.[1]
The Economic Development Commission agreed to organize and manage the council. The Lake County Economic Development Advisory Council was created to include "key stakeholders in the community and the purpose of the council will be to focus the private business community on the goals" in the county's economic development plan.[2] These goals include supporting the economic development plan entitled "Building Bridges for Economic Development in Lake County, Florida," providing creative thinking and realistic feedback throughout implementation of recommendations under this plan and serving as advocates and coalition-builders to help ensure community understanding of the recommendations in the economic development plan.[3]
Commission staff prepared a structure and process outline for the Lake County Economic Development Advisory Council (adopted August 19, 2008) which recognizes that "[t]he Advisory Council will be supported by a number of working sub-committees." Initial sub-committees included in the outline are those for "Economic Development Infrastructure;" "Industry Cluster Development;" "Marketing Communications;" and "Workforce." Broad-based participation in these sub-committees is widely encouraged to "ensure engagement by interested individuals from throughout the county."[4] The outline suggests that sub-committees are to be convened for specific purposes and dissolved when those purposes have been met. The outline states that "[a]dditional sub-committees can and should be created as deemed necessary and useful by the Advisory Council."[5]
As envisioned in the structure and process outline, the initial sub-committees would perform as follows:
• "Economic Development Infrastructure To ensure the best environment for successful economic development, this sub-committee will advise on the following:
• Land Use and Permitting Review — review and advise on suggested adjustments to zoning, land use requirements, LDRs, quick response and permitting policies, and other governmental policies encumbering or needed to enhance economic development success.
• Development Site Potential — help identify, remove roadblocks and ready properties desirable for commercial development within the county.
• Financing Sources — help identify available private, federal, grant and other funding sources available to help accomplish the strategic economic development goals of Lake County.
• Industry Cluster Development
To ensure that the needs and concerns of target industries are being met, this sub-committee will advise on the following:
• Business Concerns — identify and address infrastructure and business climate needs of targeted industries.
• Workforce Coordination — identify and address workforce training needs of local industry; work with education and Workforce Central Florida representatives to ensure workforce readiness.
• Marketing Communications
To ensure effective communications to and about the Lake County Market, this sub-committee will focus on the following:
• Energize "re-branding" of Lake County as a thriving location for business.
• Develop the "Lake County Tool Kit" to reflect community assets for businesses.
• Develop outreach strategies targeting various stakeholders (property owners, developers, financiers, media, cities, citizens) to build awareness that Lake County is "open for business".
• Assist Economic Development Infrastructure sub-committee with communication to and between the county, cities and corporate community in Lake County as it relates to economic development priorities.
• Workforce
To promote higher education and workforce training to ensure employers have access to skilled workers and talent, this sub-committee will focus on the following:
• Identifying partnerships for four-year programs to be offered in Northern Lake County as well as growing areas such as East Lake;
• Exploring the opportunity for an expanded one-stop entrepreneurial center that meets all facets of entrepreneurial development;
• Assist in establishing new programs to support specific targets sectors defined by the Industry Cluster Committee;
• Linking secondary schools with curricula geared towards targeted sectors."[6]
As set forth in the structure and process outline, the sub-committees of the advisory council are intended to review and advise the advisory council in these four economic development areas.
According to your letter, in January of 2009, the subcommittees set up by the Lake County Economic Development Advisory Council "began meeting to discuss issues which would later become recommendations which could be turned over to the BCC [board of county commissioners] by the EDC [economic development council], the LCEDAC [Lake County Economic Development Advisory Council], or given directly to the BCC by the individual subcommittees." You advise that the meetings of the subcommittees were not noticed to the public although minutes were taken. You also point out that the meetings of these subcommittees were attended by county staff working on county time at the direction of the county administrator to provide assistance to the subcommittee. It is these activities of the subcommittees that are of concern to you as possibly being subject to the Government in the Sunshine Law.
The Government in the Sunshine Law, section 286.011, Florida Statutes, requires that meetings of a public board or commission at which official acts are to be taken are to be open to the public. The test for whether the meetings of particular boards, councils, commissions, or similar entities are subject to section 286.011, Florida Statutes, has been judicially determined to be whether the board or council or other entity is subject to the dominion and control of the Legislature.[7] The statute has been held to extend to the discussions and deliberations of, as well as formal action taken by, a public board or commission.[8] In interpreting the Government in the Sunshine Law, the courts have stated that it was the intent of the Legislature to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[9]
Additionally, for section 286.011, Florida Statutes, to apply to a particular meeting, two or more members of a body or other entity or group to which the Sunshine Law applies must be present or there must have been delegation of decision-making by such a body to either a single member thereof or to an advisory group or committee used by the covered entity.[10] Moreover, for any particular meeting to be covered, the subject matter discussed must consist, at least in part, of "foreseeable action." This term refers to matters on which it is foreseeable that action will be taken by a board subject to the Sunshine Law.[11]
A private organization that performs services for a public agency and receives compensation for these services is not, by virtue of that relationship alone, subject to section 286.011, Florida Statutes. Rather, the courts have generally considered whether there has been a delegation of the public agency's governmental or legislative functions or whether the private organization plays an integral part in the public agency's decision-making process.[12]
Much of the litigation involving application of the open government laws to private organizations has been in the area of public records, however, and the courts have frequently referred to Chapter 119, Florida Statutes, in determining the applicability of the Sunshine Law.[13]
Recent decisions by Florida courts to determine whether the open government laws apply to a private entity focus on whether the private entity is merely providing services to the public agency or whether it is standing in the shoes of the public agency. For example, the court in Stanfield v. Salvation Army, [14] in holding a private corporation subject to Chapter 119, Florida Statutes, noted that a private corporation taking over the county's role as the provider of probation services "was not the provision of architectural services as in Schwab, but the complete assumption of a governmental obligation. Rather than providing services to the county, the Salvation Army provided services inplace of the county."[15] (emphasis in original)
The Fifth District Court of Appeal in News-JournalCorporation v. Memorial Hospital-West Volusia, Inc., [16]
reviewed the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities. The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."[17]
The district court reversed the lower court's holding that the not-for-profit company was outside the scope of the Public Records Law and the Government in the Sunshine Law and the Florida Supreme Court approved this decision.[18]
In a recent Informal Attorney General Opinion, this office considered the application of Florida's open government laws to Florida's Great Northwest, Inc., a private not-for-profit corporation existing to "facilitate economic and workforce development within the sixteen county region of northwest Florida."[19] Membership in the organization was open to any person or organization with an interest in the economic development of the state and was made up primarily of private development organizations, post-secondary education institutions, and workforce development boards. The corporation was managed by a board of directors made up of public and private sector members. The informal opinion concluded that the corporation was not subject to the public records and sunshine laws since no delegation of a public agency's governmental function was apparent and the corporation did not appear to play an integral part in the decision-making process of a public agency. Further, while acknowledging that economic development is a governmental function, the opinion recognized that it is not exclusively governmental and the corporation, in that instance, was not acting on behalf of a particular public agency in accomplishing this function. Finally, the funding of the corporation was by membership pledges primarily received from private entities and federal grant moneys, rather than state or local funds.
In the instant inquiry, the Lake County Economic Development Advisory Council is a private nongovernmental organization created to focus the private business community on the goals in the county's economic development plan. However, the situation you have described is not one in which a private not-for-profit entity presents independently developed, unsolicited plans or proposals for economic development to the county. Rather, Lake County commissioned and adopted an economic development strategic plan, the terms of which, according to your letter, are to be implemented by the Lake County Economic Development Advisory Council and the subcommittees of the council. By utilizing the Lake County Economic Advisory Council for the accomplishment of the county-adopted economic development strategic plan, the board of county commissioners has effectively delegated accomplishment of the goals set forth in the plan to the council and its subcommittees. Thus, while the statute would not ordinarily apply to private organizations, section 286.011, Florida Statutes, does apply when there has been a delegation of a board's authority to conduct public business such as carrying out the terms of the county's strategic economic development plan.
The parent organization overseeing the Lake County Economic Development Advisory Council and its committees receives its funding from both private corporate partners and public partners including Orange, Osceola, Lake and Seminole Counties, and the City of Orlando. The economic development council is not financially dependent on any single entity either public or private and its compensation package for services is the subject of contract negotiation with the four counties and the City of Orlando. While not ultimately determinative of the issue, the coupling of county funding with the delegation of accomplishment of the goals of the county's economic development plan supports the conclusion that the Lake County Economic Development Advisory Council and its subcommittees are subject to open government laws.[20]
In sum, it is my opinion that the subcommittees of the Lake County Economic Development Advisory Council are subject to the requirements of the Government in the Sunshine Law.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] See "Introduction" pp. 1-2, Building Bridges forEconomic Development in Lake County, Florida, T.I.P. Strategies, February 2008.
[2] Lake County Resolution 2008-120.
[3] See Lake County Economic Development Advisory Council Structure and Process Outline, adopted August 19, 2008.
[4] Lake County Economic Development Advisory Council Structure and Process Outline, adopted August 19, 2008.
[5] Id.
[6] Supra n. 4.
[7] City of Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971);Times Publishing Company v. Williams,222 So. 2d 470 (Fla. 2d DCA 1969).
[8] Times Publishing Company, supra.
[9] Id.
[10] See generally, Hough v. Stembridge,278 So. 2d 288 (Fla. 3d DCA 1973); Town of Palm Beach v.Gradison, 296 So. 2d 473, 477 (Fla. 1974); Ops. Att'y. Gen. Fla. 95-60 (1995), 85-55 (1985), and 74-294 (1974).
[11] See Board of Public Instruction of Broward County v.Doran, 224 So. 2d 693 (Fla. 1969); Canney v. Board ofPublic Instruction of Alachua County, 278 So. 2d 260 (Fla. 1973); Ops. Att'y. Gen. Fla. 93-79 (1993) and 81-88 (1981).
[12] And see IDS Properties, Inc. v. Town of Palm Beach,279 So. 2d 353 (Fla. 4th DCA 1973), wherein the court held that there was no government by delegation exception to the Government in the Sunshine Law by undertaking to delegate the conduct of public business through the use of an alter ego.
[13] See generally Marston v. Gainesville Sun PublishingCompany, Inc., 341 So. 2d 783 (Fla. 1st DCA 1976), cert.denied, 352 So. 2d 171 (Fla. 1977); Cape Coral Medical Center,Inc. v. News-Press Publishing Company, Inc.,390 So. 2d 1216, 1218 n. 5 (Fla. 2d DCA 1980) (inasmuch as the policies behind Ch. 119 and s. 286.011 are similar, they should be read together); Wood v. Marston,442 So. 2d 934, 938 (Fla. 1983); and Krause v. Reno,366 So. 2d 1244 (Fla. 3d DCA 1979).
[14] 695 So. 2d 501 (Fla. 5th DCA 1997).
[15] Id. at 503.
[16] 695 So. 2d 418 (Fla. 5th DCA 1997).
[17] Id. at 420.
[18] See Memorial Hospital-West Volusia, Inc. v. News-JournalCorp., 729 So. 2d 373 (Fla. 1999).
[19] See Inf. Op. to Gaetz and Coley, dated December 17, 2009.
[20] See, e.g., Wood v. Marston, 442 So. 2d 934 (Fla. 1983);Board of Public Instruction of Broward County v. Doran,224 So. 2d 693 (Fla. 1969); Krause v. Reno,366 So. 2d 1244 (Fla. 3d DCA 1979) ("[i]t is beyond doubt that [s. 286.011, Fla. Stat.] is to be construed liberally in favor of open government."). And see Town of Palm Beach v.Gradison, 296 So. 2d 473, 477 (Fla. 1974) holding that when in doubt as to the statute's applicability, such doubt should be resolved in favor of openness.