473 So.2d 222 (1985)
CAPE PUBLICATIONS, INC., Appellant/Cross-Appellee,
v.
The CITY OF PALM BAY, et al., Appellees/Cross-Appellants.
No. 83-1771.
District Court of Appeal of Florida, Fifth District.
June 27, 1985.
Rehearing Denied August 1, 1985.
*223 Joe Teague Caruso, of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, P.A., Cocoa Beach, for appellant/cross-appellee.
Nicholas F. Tsamoutales, Palm Bay, for appellees/cross-appellants.
ORFINGER, Judge.
Cape Publications, Inc. appeals the order of the trial court denying its motion for attorney's fees and the City of Palm Bay and its city manager, Robert G. Matte, appeal the order of the trial court finding that certain activity of the City and the city manager violated Florida's Sunshine Law, section 286.011, Florida Statutes (1983). We reverse the order finding a Sunshine Law violation, and because there was no violation, the order denying the award of attorney's fees is affirmed.
The facts of this case are not in essential dispute. The City's charter places the sole responsibility for the selection of a police chief in the city manager. When the need arose to select a new chief of police, the city manager (Matte) determined some general criteria and, with the assistance of the city's personnel director, advertised for applicants. When the applications were in, the city manager reviewed each application and selected three for interviews.
The city manager then asked certain people to sit in with him during the interviews. Those persons were: the city personnel director, the city attorney, a member of the Florida Department of Law Enforcement and a deputy police chief of the City of Orlando. The latter two persons were not employed by or otherwise connected to Palm Bay. The sole function of the group was to sit in when the city manager interviewed the applicants he had selected, to ask questions of a technical nature such as would help the city manager better understand the qualifications of the applicant, and to offer such comments to the manager as they deemed pertinent on the qualifications of the applicants. The record supports the City's position that the city manager screened all applicants, determined who would be interviewed, established the procedures for the interviews, was present during each interview, would decide which applicant to further interview, and would ultimately select the new police chief. The group was delegated no authority; they did not select or screen applicants, and they were not authorized or delegated the responsibility of making recommendations. Their sole function was to assist the city manager in acquiring information by asking questions during the interviews and then discussing with the city manager the qualifications of each candidate after the interview, so that he could decide which of the three candidates he wished to interview further on a one-to-one basis.
*224 The pertinent statute is section 286.011(1), Florida Statutes (1983), which provides:
(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
In addressing the issues raised by Cape Publications, Inc. in its action for mandamus seeking to compel the City to open the interviews to the public, the trial court found that the group constituted a "board" and that its meetings were required to be open to the public. This result apparently flowed from the fact that two members of the group were non-employees of the City, because the trial court's order specified that the Sunshine Law would not apply if the interviews were conducted by the city manager individually, or together with only members of the city staff.
The trial court relied heavily on Krause v. Reno, 366 So.2d 1244 (Fla. 3d DCA 1979), but that case is clearly distinguishable on its facts. In Krause, the city manager of the City of Miami selected five people to meet together and screen applications, conduct interviews, evaluate candidates, and recommend four or five of the best qualified candidates for the position of Chief of Police for Miami and to assist the city manager in making his final selection as to a police chief. One member of the group was an employee of the city. It was stipulated that the city manager had, at all times, the power to make the final decision as to who would be the next police chief. The issue before the court was whether the advisory group was a "board" within the meaning of the Sunshine Law and whether the city manager fell within the definition of an "agency." The court stated, "[t]here can be no doubt that an advisory board appointed to make recommendations to an appointing authority is subject to the dictates of the Sunshine Law." Id. at 1251. But the facts in Krause are not the facts in this case.
This case more closely resembles the factual situation of Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976). Bennett, as president of St. Petersburg Junior College, periodically met in private with a group of college employees for the purpose of discussing with them various problems and suggestions relating to employees' working conditions, wages and hours. Warden, a labor organizer, frustrated by her unsuccessful efforts to attend these closed meetings sought and secured an injunction from the trial court on the assertion that Bennett and the group constituted a "board" within the contemplation of the Sunshine Law. In reversing, the appellate court found that these were "fact-finding" sessions established to assist the president in the execution of his duties, and were not meetings within the contemplation of the Sunshine Law. Explaining its decision, the court said:
[F]requent and unpublicized meetings between an executive officer and advisers, consultants, staff or personnel under his direction, for the purpose of "fact-finding" to assist him in the execution of those duties, are not meetings within the contemplation of the Sunshine Law... . It would be unrealistic, indeed intolerable, to require of such professionals that every meeting, every contact, and every discussion with anyone from whom they would seek counsel or consultation to assist in acquiring the necessary information, data or intelligence needed to advise or guide the authority by whom they are employed, be a public meeting within the disciplines of the Sunshine Law. Neither the letter nor the spirit of the law require it.
333 So.2d at 99, 100.
In Wood v. Marston, 442 So.2d 934 (Fla. 1983), the court noted the distinction between Krause and Bennett, and discussed them both along with Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974) and *225 News-Press Publishing Co. v. Carlson, 410 So.2d 546 (Fla. 2d DCA 1982). When the dean of the University of Florida College of Law announced his retirement, Marston, as university president instructed the law school faculty to elect a "search-and-screen" committee, the purpose of which committee was to solicit and screen applications for the deanship and to submit for faculty approval a list of the best qualified applicants before forwarding the list to Marston for his final selection. Local news media interests sought a temporary and permanent injunction prohibiting Marston from excluding the press and public from meetings of the committee. The supreme court held that the Sunshine Law applied to the meetings of this committee because, although the committee had an admitted "fact-gathering role" in the solicitation and compilation of applications,
It had an equally undisputed decision-making function in screening the applicants. In deciding which of the applicants to reject from further consideration, the committee performed a policy-based, decision-making function delegated to it by the president of the university through the faculty as a whole. [Emphasis added].
Id. at 938.
Commenting further, the court said that the facts of that case were clearly analogous to Town of Palm Beach v. Gradison and Krause v. Reno, in that "[e]ach of those cases involved delegation of a portion of the decision-making authority to an advisory group." Id. at 939. We find nothing sub judice that indicates any delegation of authority to or decision-making function in the group or committee used by the city manager of Palm Bay to assist him here. Unlike Krause, this group did no screening, conducted no interviews and made no recommendations to the city manager. Those tasks were performed by the city manager who was present at each interview, and who requested the group only to provide him with facts, through questioning and comments, such as would assist him in the execution of his duties. No decision-making was involved in the committee function. If there had been such decision-making function, then the Sunshine Law would apply even if all members of the group were city staff, because it is the nature of the act to be performed, not the make-up of the group, that determines the application of the statute. Wood; News-Publishing Co. Thus the trial court was not entirely correct when it held that the meetings could be private if only city staff attended, because the Wood court abolished any "staff exception" where the staff members compose a committee which is delegated authority normally within the governing body; i.e., a decision-making function. Wood, 442 So.2d at 941.
Because the record demonstrates that the committee selected by the city manager had the sole function of assisting him with "fact-finding," to supply him with the necessary information so that he could properly exercise his duties and responsibility in selecting a new chief of police, and because the committee had no decision-making function such as authority to screen, interview or recommend applicants to the city manager, the group was not a "board" within the contemplation of the Sunshine Law and its meetings were not required to be open to the public.
The order requiring the City to open the interview sessions is reversed, and the order denying the award of attorney's fees to appellant is affirmed.
AFFIRMED in part, REVERSED in part.
DAUKSCH, and COWART, JJ., concur.