765 So.2d 785 (2000)
Rodney LYON, Appellant,
v.
LAKE COUNTY, etc., et al., Appellees.
No. 5D99-1371.
District Court of Appeal of Florida, Fifth District.
July 28, 2000.
Rehearing Denied September 8, 2000.
*787 Jonathan D. Kaney, Jr., and Jonathan D. Kaney, III, of Cobb, Cole & Bell, P.A., Daytona Beach, and Edward P. Jordan, III, of Edward P. Jordan, II, P.A., Clermont, for Appellant.
Henry W. Jewett, II, of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellees.
THOMPSON, C.J.
Rodney Lyon appeals a judgment rendered after a bench trial as to the first count of his second amended complaint, which concerned alleged sunshine law violations, and the adverse summary judgment entered as to the second count of that complaint, which asked for injunctive relief and damages. We affirm.
The case arose over a dispute regarding Lyon's property on U.S. Highway 27 in Lake County. On March 8, 1995, a Lake County employee, Mike Carter, made a complaint to the County that Lyon's property was being excavated without a permit. In April 1995, James Barker, Director of Lake County's Environmental Management Division, mailed a notice of violation to Lyon notifying him that this development violated the County's Land Development Regulations. Paula Blazer, the County's environmental program branch supervisor, and Jay Sargent, planner III and zoning supervisor, met with Lyon and Lyon's father. Blazer and Sargent advised the Lyons as to how the violation could be resolved, including advising them to submit a site plan to the County.
On August 7, 1995, Lyon applied to the Florida Department of Transportation for a temporary connection permit (a driveway) for his property. On August 21, 1995, the temporary connection permit was granted. On September 11, 1995, Leslie Campione, Lyon's attorney at the time, sent a letter to Greg Stubbs, Director of Development and Regulation Services for the County, enclosing a sketch of Lyon's property. This sketch was not accompanied by an application for site plan review and was not accompanied by the appropriate fee for a site plan review.
On September 20, 1995, a pre-Technical Review Committee meeting was held in Lake County. The Technical Review Committee (TRC) was created by the Lake County Commission. The TRC's function is described in the Lake County Code:
13.05.00 Technical Review Committee
13.05.01 Membership. The Technical Review Committee is comprised of the following: County Manager or designee(s), Lake County Sheriff, School District of Lake County, Water Authority, Lake County Health Department, Public Utilities and other representatives deemed appropriate by the County Manager or designee.
13.05.02 Powers and Duties. The Technical Review Committee is advisory to the County Manager or designee in the following:
Preliminary Subdivision Plats Planned Unit Developments MUQD's DRI's FQD's Comprehensive Plan Amendments Conditional Use Permits Rezoning Site Plans Master Park Plans [sic].
The Technical Review Committee shall meet weekly the first four (4) Thursdays of each month.
A pre-TRC meeting, on the other hand, was not created by Lake County ordinance or any other official law. A pre-TRC meeting, according to the trial court's partial final judgment, was an "informal ... meeting attended only by County staff members."
Attendance at these pre-TRC meetings varied, but Farrel, Carter, Sargent, Bechtel and Pluta attended the September 20 meeting. No official action was taken or decision made at this meeting as to Lyon's property, although his property was discussed. This meeting is the first of three different meetings Lyon in the first count *788 of his complaint alleges violated the sunshine law, as codified at Section 286.011, Florida Statutes.[1] On September 21, 1995, the Environmental Protection Board notified Lyon that the Environmental Protection Board complaint, concerning the excavation without a permit, had been dismissed.
The second meeting Lyon contends violated the sunshine law took place on October 4, 1995. This meeting, another pre-TRC meeting, was attended by Bechtel, Pluta, Tom Gutting on behalf of the Health Department, and possibly others. Little evidence was presented regarding what actually took place at this meeting. The trial court found that there was:
no evidence presented at trial other than Ms. Bechtel's notes (plaintiff's Exhibit "28") which established that the plaintiff's property was discussed at this meeting. None of the reported participants in that meeting, such as Mr. Gutting, Mr. Pluta, or Ms Bechtel, recalled the plaintiffs property being discussed.
Additionally, the Court finds by the greater weight of the evidence that the October 4, 1995, meeting was an informal pre-TRC meeting involving only staff. Moreover, the greater weight of the evidence shows that any discussions of the plaintiff's property would have been purely informational. See Mr. Pluta's October 5, 1995, memorandum (plaintiffs Exhibit "10").
The Court also finds that since the plaintiff still had not triggered the development review process as of October 4, 1995, by submitting the proper site plan and the appropriate fees, there was no official action which could have been taken at the October 4, 1995, meeting.
The day after this meeting, Pluta wrote a memorandum to Stubbs regarding Lyon's property, pointing out that Lyon was still going to have to submit a site plan regarding his intentions with his property. This memo also was sent to Campione.
On December 21, 1995, Alan Hewitt, a County Water Resource Specialist, inspected Lyon's property. This led to another notice from Environmental Management to Lyon regarding Lyon's violations of the County Land Development Regulations in the use of his land. Between that date and March 1996, the record reveals that Lyon met with Lake County Environmental Management, the County Attorney, County Public Services and an employee of the Florida Department of Transportation. Lyon was told he could restore his site to its original elevations, request a variance to the mining regulations, submit a site plan after the fact, or submit a mining site plan after the fact; he was also advised to cease all excavating and mining activities. Thereafter, on March 14, 1996, Lyon filed his first complaint in this instant action.
Sometime in early July 1996, Lyon, through his second attorney Edward Jordan, submitted a "revised" site plan dated July 5, 1996 to Assistant County Attorney Bruce Duncan, who submitted it to the TRC for review. By this time, the County was apparently calling the TRC by its new name, "Development Review Staff' (DRS)however, the name did not officially change in Lake County's code until September 1996. County Attorney Sanford Minkoff advised Jordan that the site plan would be reviewed on July 11, 1996 by the *789 TRC/DRS, and gave him an opportunity to ask for the matter to be continued to another day. This meeting had been advertised as a DRS meeting in the Lake Sentinel newspaper on June 27, 1996. Minkoff testified that Jordan did not object to this review taking place, and in fact the site plan was approved at the July 11 TRC/DRS meeting. This is the third meeting Lyon complains violated Florida's sunshine law; the trial judge ruled that this meeting did not have to be held in the sunshine, either.
Florida's sunshine law, section 286.011[2], provides a right of access to governmental proceedings. Section 286.011, in relevant part, states:
(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.
(2) The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded, and such records shall be open to public inspection. The circuit courts of this state shall have jurisdiction to enforce the purposes of this section upon application by any citizen of this state.
There was no evidence presented by Lyon to suggest that the individuals who attended the September 20, 1995, and October 4, 1995 pre-TRC meetings had any decision-making authority during those meetings. Rather, the evidence developed at trial pointed to the conclusion that the pre-TRC meetings were informational meetings where Lyon's property was addressed but no formal action was taken or even could have been taken.
An exception to the applicability of the sunshine law to advisory committees has been recognized for committees related to fact-finding only. When a committee has been established for and conducts only information gathering and reporting, the activities of that committee are not subject to section 286.011, Florida Statutes. See Cape Publications, Inc. v. City of Palm Bay, 473 So.2d 222 (Fla. 5th DCA 1985); accord, Op. Att'y Gen. Fla. 95-06 (1995)(when a group, on behalf of a public entity, acts solely as a fact-finder or information gatherer with no decision-making authority, no board or commission subject to the sunshine law is created). Because the first two meetings were merely informational, the formalities attending to meetings in the sunshine were not required. Lyon had the burden of proof to establish by the greater weight of the evidence that a meeting which should have been held in the sunshine had taken place on these dates. He failed to carry that burden.[3]
*790 The trial court's ruling as to the September 20, 1995, and October 4, 1995 pre-TRC meetings as related to Lyon's claim in Count One of his Second Amended Complaint is supported by competent substantial evidence. Based on those findings, the trial judge also made the correct determination on the law that these meetings, as to Lyon, did not have to be held in the sunshine.
On the other hand, the TRC meeting which took place on July 11, 1996 should have been held in the sunshine, contrary to the trial court's determination. The sunshine law applies to "any board or commission of any state agency or authority of any county, municipal corporation, or political subdivision...." § 286.011(1), Fla. Stat. Therefore, "[b]oards or commissions created by law or by a public agency are clearly subject to the provisions" of the sunshine law. See Office of the Attorney General, Govt. in the Sunshine Manual 20 (1999). Since the TRC was created by the Lake County Commission, it follows that the TRC was a sunshine body.
As the TRC was a body subject to sunshine, the July 11, 1996 meeting had to meet three prerequisites so as not to run afoul of the sunshine law. §§ 286.011(1)(2), Fla. Stat. First, the meeting had to be held open to the public. Lyon does not contend it was not. Second, there had to be minutes taken of the meeting. Lyon does not contend on appeal, and did not contend below, that this prong of the sunshine law was not met. Lastly, there has to be adequate notice of the meeting.
Lyon concedes that on June 27, 1996, a July 11 meeting of the DRS was advertised in the Lake Sentinel. He contends, however, that this notice was not "adequate notice" under the sunshine law because the TRC was not formally known in the community at that time as DRS; the change in name was not effected until September 1996. This argument, ignores the evidence that the County Attorney personally apprised Lyon's attorney of the meeting and its function as to Lyon's site plan by the County Attorney.[4] Under the facts of the instant case, it would be unjust to reward Lyon, who had personal due notice of the meeting, because the advertisement in the paper regarding the hearing failed to correctly name the committee. As to this meeting, the prerequisites of the sunshine law were adequately met and thus we do not disturb the trial court's result as to the alleged sunshine law violations.
Lyon's appeal of the summary judgment entered in favor of the county on his equitable estoppel claim is also not well taken. Although it is well-settled under Florida law that the doctrine of equitable estoppel may be invoked against a governmental *791 body under the appropriate circumstances, those circumstances are rare and exceptional. See Dolphin Outdoor Advertising v. Department of Transportation, 582 So.2d 709, 710 (Fla. 1st DCA 1991); Reedy Creek Improvement District v. State Dep't. of Environmental Regulation, 486 So.2d 642, 647 (Fla. 1st DCA 1986). To make out a case for equitable estoppel, Lyon must show: (1) his good faith reliance on (2) some act or omission of the government and (3) a substantial change in position or the incurring of excessive obligations and expenses so it would be highly inequitable and unjust to destroy the right the property owner acquired. See Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15 (Fla.1976); Franklin County v. Leisure Properties, Ltd., 430 So.2d 475, 479 (Fla. 1st DCA 1983).
Lake County conceded for purposes of its motion below, and thus concedes here as well, the first two elements: that Lyon in good faith relied on certain acts of Lake County and its officials. Lake County contended, however, and the trial court apparently agreed, that the material facts were not in dispute and that the facts did not reflect any substantial change in position or the incurring of excessive obligations by Lyon. Thus, since one element fell, the entire cause of action fell.
The material facts allegedly not in dispute are that on September 21, 1995, the first Environmental Protection Board complaint against his property was dismissed and Lyon was notified. Then, on December 22, 1995 another Environmental Protection Board complaint was filed. Therefore, Lake County contends, the action Lyon relied on was the dismissal of the complaint regarding his excavating on his property. He could only rely on that dismissal until the Environmental Protection Board filed its second complaint, on December 22, because that second complaint acted as a "red flag" that his conduct was no longer permitted and he could no longer rely on that prior dismissal. Therefore, Lyon had to show that he substantially changed his position between September 21, 1995 and December 22, 1995.
Lyon conceded in his deposition that he did not substantially change his position during that time; he contends on appeal, however, that there were other actions by Lake County, which occurred in August and early September, which he relied upon and because of which he substantially changed his position. In his Second Amended Complaint, Lyon pointed to the Environmental Protection Board September 21 dismissal of the complaint as the conduct upon which he detrimentally relied. Therefore, he cannot now argue that he relied on earlier conduct by Lake County in order to avoid the consequences of his own admission that from September 21 to December 22 he did not substantially change his position. Accordingly, summary judgment was correctly granted as to Count Two of the Second Amended Complaint. See City of Pompano Beach v. Yardarm Restaurant, Inc., 509 So.2d 1295 (Fla. 4th DCA 1987).[5]
AFFIRMED.
DAUKSCH[6], J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] The trial court limited Lyon's proof to evidence related to his property, i.e., he was not allowed to present evidence regarding other actions taken at the pre-TRC meetings or TRC meetings in order to show that these meetings violated the sunshine law. Rather, he could only show that the meetings violated the sunshine law by presenting evidence regarding how the meetings took place and who they involved as related to his claim. Lyon does not contend this limitation was an abuse of discretion. As such, Lyon's "new" claim on appeal that he is bringing this action on behalf of all citizens, as per section 286.011, is not well-taken. If he had brought the claim on behalf of all citizens, the trial court would not have limited him as it did, or Lyon should now be contending that decision was an abuse of discretion.
[2] Neither Lyon nor the County addressed Article I, Section 24 of the Florida Constitution below.
[3] Lyon points out that any meeting of individuals who are members of a sunshine board or committee are also supposed to be open to the public. See Board of Public Instruction v. Doran, 224 So.2d 693, 698 (Fla.1969). Therefore, his argument would follow, since the TRC was a sunshine committee the pre-TRC meetings should have been in the sunshine. Doran states: "the obvious intent [of Florida's sunshine law] [is] to cover any gathering of the members where the members deal with some matter on which foreseeable action will be taken...." Doran, 224 So.2d at 698. The trial court recognized this concern but rejected it based on the facts of the case, where he determined that the September 20, 1995, meeting was not a sunshine meeting:

The Court rejects the plaintiff's argument that the September 20, 1995, meeting was subject to the Sunshine Law because it was foreseeable to Mr. Sargent and Mr. Pluta that the plaintiff would submit a site plan at some point in the future. The Court finds that the undisputed evidence was that the plaintiff never filed a proper site plan or paid any fees in the fall of 1995.... Thus, the Court finds that the plaintiff's "foreseeability" argument is without merit since it ignores the fact that the plaintiff never did anything before July 1996 to trigger the development review process.
(emphasis in original). In other words, the trial court's findings of fact make it clear that the evidence presented at trial did not show that it was foreseeable in September and October of 1995 that Lyon would ever submit a site plan in order to trigger review of his potential land use. Therefore, the holding of Doran is inapplicable, because it is dependent on the committee members discussing foreseeable work of the committee.
[4] Lyon relies on Rhea v. City of Gainesville, 574 So.2d 221 (Fla. 1st DCA 1991), which held that notice to the media one and one-half hours before a public meeting was not adequate notice per the sunshine law. Rhea is factually distinguishable from the instant case in that the case does not indicate whether the appellant personally had notice of the late-called hearing. Moreover, Lyon overlooks this telling quote by the Rhea court:

in a 1973 attorney general's opinion, it was stated that the meaning of the term "due public notice" would vary depending on the fact situation, but that its purpose was to apprise the public of the pendency of matters that might affect their rights, afford them the opportunity to appear and present their views, and afford them a reasonable time to make an appearance if they wished.
Op.Atty.Gen., 73-170, May 17, 1973.
Rhea, 574 So.2d at 222.
[5] Lyon vaguely alludes in his second amended complaint to Lake County's approving of the FDOT temporary driveway permit and "Lake County's official actions [and] statements" to support his equitable estoppel claim as having been created not by the dismissal of the Environmental Protection Board complaint but by earlier Lake County conduct. In fact, in an appendix submitted with his Reply Brief, he lists all the Lake County actions (the list includes actions by other parties, as well) which led him to detrimentally rely on Lake County and change his position. Each of these actions, however, cannot as a matter of law have been reasonably relied on so as to make out a claim for equitable estoppel. Therefore, whether this Court considers Lyon bound to September 21, 1995 or looks at the late-alleged other conduct, Lyon has not established the elements necessary to survive summary judgment analysis.
[6] Did not participate in oral argument.