995 So.2d 1068 (2008)
Jennifer R. FINCH and SC. Read, Inc., Appellant,
v.
SEMINOLE COUNTY SCHOOL BOARD, Appellee.
No. 5D07-2422.
District Court of Appeal of Florida, Fifth District.
November 21, 2008.
*1070 Alex Finch and Damon Chase, of Chase Freeman, P.A., Lake Mary, for Appellant.
Marcia K. Lippincott, of Marcia K. Lippincott, P.A., Lake Mary, and Ned N. Julian and Serita D. Beamon, Sanford, for Appellee.
MONACO, J.
The appellants, Jennifer R. Finch and SC. Read Inc., take this appeal from the final order of the trial court denying permanent injunctive relief against the appellee, Seminole County School Board. As they did in the trial court, the appellants argue that the School Board violated section 286.011, Florida Statutes (2004), of Florida's Sunshine Law, in its high school rezoning process. Because we conclude that there was only one unintentional violation, and that the violation was cured by the subsequent action of the School Board, we affirm.
While we have carefully considered each of the multiple claims of violations of the Sunshine Law by the School Board, we consider only one, involving a school bus tour taken by the members of the School Board, to be significant enough to discuss. A very truncated version of the dispositive facts concerning the bus trip is as follows.
The School Board found it necessary to revise its high school attendance zones as a result of the opening of Hagerty High School, a new school within its district. To facilitate this process, the School Board formed a Core Committee consisting of various school principals, parents and others from the area middle and high schools for the purpose of working with the administrative staff to develop plan alternatives, and to gather and disseminate information from and to the community. The Core Committee convened three times to develop rezoning plans, all of which were open to the public. Eventually the Core Committee proposed three alternative plans.
After receiving the plans the members of the School Board, the Superintendent and Deputy Superintendent of Schools, two members of the media, two candidates for the School Board, and a representative of the transportation sector of the school system were taken on a school bus tour of the neighborhoods that would be affected by the rezoning. The purpose of the tour was to enable the members of the School Board to physically view the potentially impacted areas and to look at possible school bus routes that might be utilized, depending on which plan was finally adopted. The School Board viewed this as a "fact finding" trip, and thus not covered by the Sunshine Law. As a precautionary measure, the School Board members were separated from each other by several rows of seats. According to the evidence, no member discussed his or her preference for any of the plans, no opinions were expressed, and no vote was taken during the trip. Likewise, no minutes of anything that happened on the trip were taken.
A week later the School Board convened a public meeting that lasted between five and seven hours, and was attended by 800 to 900 people. The public was given ample opportunity to make comments at the meeting. Following the public input segment, the Superintendent made his recommendation for one of the proposed plans. One School Board member spoke in favor of modifying the plan, but was eventually convinced that the proposed plan with slight modifications would best meet the *1071 needs of the community. After a lengthy discussion the School Board unanimously approved the plan with some changes, and authorized the advertising of the selected plan for final adoption a month later. The School Board, however, did not consider the final adoption at the originally scheduled time because of a rule challenge by the appellants. After the challenge was dismissed, the plan was readvertised and subsequently considered for final adoption. At the second public hearing seventeen members of the community addressed the School Board on this issue. The plan was then adopted.
Prior to the second public hearing the appellants filed a complaint in the trial court seeking an injunction to prevent the School Board from formally adopting and implementing the advertised rezoning plan for failing to comply with section 286.011, the Sunshine Law. Multiple Sunshine Law violations were alleged, including the matter of the bus trip. After a bench trial the trial court denied relief to the appellants, finding no Sunshine Law violation, and concluding, among other things, that the bus trip fell within a "fact-finding" exception to the Sunshine Law. This appeal ensued.
We review the denial of a permanent injunction by using an abuse of discretion standard. See Smith v. Coalition To Reduce Class Size, 827 So.2d 959 (Fla. 2002). The orders of the trial court rendered in this connection are entitled to a presumption of correctness and will not be disturbed unless the party seeking the injunction can demonstrate a reversible abuse of that discretion. See Operation Rescue v. Women's Health Ctr., Inc., 626 So.2d 664 (Fla.1993). If reasonable persons could differ as to the propriety of the actions taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. Id.
Section 286.011 provides that unless otherwise excepted, all meetings of any board or commission of any state agency or authority, or of any agency or authority of a county, municipality or political subdivision at which official acts are to be taken are to be open to the public at all times. A public body is required to give reasonable notice of all such meetings, and no action of a public body not in conformity with these requirements is to be considered binding. The Sunshine Law applies to the actions of school boards. See Knox v. Dist. Sch. Bd. of Brevard, 821 So.2d 311 (Fla. 5th DCA 2002); Mitchell v. Sch. Bd. of Leon County, 335 So.2d 354 (Fla. 1st DCA 1976).
The appellants contend that the trial court erred when it found that the bus trip did not violate section 286.011 because the bus tour was not simply a "fact-finding" event where no official act was taken. They assert instead that the bus trip was a meeting within the purview of the Sunshine Law because the School Board members reviewed the rezoning plans and made personal decisions regarding the viability of the plans. Finally, the appellants argue that even had the event been solely a "fact-finding" mission, the fact-finding exception only applies to advisory committees and not to the ultimate decision-making body. The School Board disagrees arguing that the purpose of the bus tour was only to explore the effect rezoning would have on a number of different communities and bus transportation routes. It underscores that there was no open discussion regarding the rezoning; no one either discussed or expressed a preference for any plan; and no decisions were made. We conclude, however, that even if the School Board is entirely accurate with respect to the occurrences during the bus tour, the School Board still violated the Sunshine Law because the "fact-finding" *1072 exception does not apply to the ultimate decision making governmental authority.
In Wood v. Marston, 442 So.2d 934 (Fla. 1983), the supreme court held that the Sunshine Law applied to meetings of a "search and screen" committee that was tasked with the obligation to solicit and screen applications for the position of dean of the University of Florida Law School. After making its selections, the committee was to forward its recommendations to the faculty for approval. When the news media sought access to the meetings of the committee, it was denied. The media then sought a temporary injunction to keep the committee from excluding it. The supreme court held that even though the committee had a "fact-gathering role," its meetings nevertheless had to be open because it unquestionably had a decision-making function; that is, it had to decide who to reject and who to recommend. Because it had some quantum of ultimate decisional authority in this respect, its meetings were subject to the Sunshine Law.
This court spoke on the fact-gathering issue in Cape Publications, Inc. v. City of Palm Bay, 473 So.2d 222 (Fla. 5th DCA 1985). In that case the Palm Bay city charter placed the sole responsibility for the selection of the city police chief on the city manager. When the need arose for a new police chief, the city manager articulated some general requirements for candidates for the office, and then advertised for the position. When the applications were received, the manager selected three persons to be interviewed. The manager asked the city personnel director, city attorney and a few others to sit with him during the interviews. The function of the persons sitting with the manager was to ask questions of a technical nature so that the manager could better understand the qualifications of the applicants, as well as to offer comments pertinent to their qualifications. Ultimately, the manager alone selected the new chief. We reversed a judgment of the lower court to the effect that the process utilized violated the Sunshine Law because the record reflected that the committee selected by the manager was designed only to supply him with information so that he could properly exercise his executive duty to select a new chief. We arrived at this conclusion, in part, because the committee had no decision-making function and was, therefore, not a board within the contemplation of the statute.
Still later in Lyon v. Lake County, 765 So.2d 785, 789 (Fla. 5th DCA 2000), review denied, 790 So.2d 1105 (Fla.2001), we made it explicitly clear that "[a]n exception to the applicability of the sunshine law to advisory committees has been recognized for committees related to fact-finding only." [Emphasis supplied]. We pointed out that one of the organizations in question in Lyon, as with the committee in Cape Publications, had no decision-making authority. Accordingly, it was not a body that was subject to the open meetings requirement. See also Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976) (finding that the Career Employees Council was not subject to the Sunshine Law because the Council had no decision-making authority and only served to discuss with the President of the Junior College various problems and suggestions relating to employees' working conditions in general and wages and hours); Fla. Att'y Gen. Op. 96-32 (stating that a limited exception to the applicability of the Sunshine Law to advisory committees has been recognized for committees established for fact-finding only, but if that committee also has the authority to make recommendations it is participating in the decision making process and is subject to section 286.011).
In the present case it is clear that the School Board was not an advisory board. *1073 It had ultimate decision-making authority; it was gathered together in a confined bus space; and it undoubtedly had the opportunity at that time to make decisions outside of the public's scrutiny. We conclude, therefore, that the conduct of the bus tour, indeed, constituted a violation of the Sunshine Law.
That conclusion, however, does not end our analysis. In Tolar v. School Board of Liberty County, 398 So.2d 427, 428 (Fla.1981), the Florida Supreme Court held that public final action of a board or committee subject to the Sunshine Law will not always be void and incurable simply because the topic of the public action was previously discussed at a private meeting. Indeed, the Sunshine Law can be satisfied if the board or commission reaches a mutual decision on the pertinent issue when they subsequently meet together in public for their "formal action." See Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla.1977). That is to say, some Sunshine Law violations may be cured by later actions of the decision maker.
The language of the Tolar decision illuminates the elements of an effective cure for a Sunshine Law violation. A violation may be cured by an independent final action taken in the sunshine that is "not merely a ceremonial acceptance of secret actions and not merely a perfunctory ratification of secret decisions at a later meeting open to the public." Tolar v. Sch. Bd. of Liberty County, 398 So.2d at 429. Thus, under Tolar, a full, open and independent public hearing of the disputed issue can remedy the earlier violation. See Zorc v. City of Vero Beach, 722 So.2d 891, 902 (Fla. 4th DCA 1998), review denied, 735 So.2d 1284 (Fla.1999); Monroe County v. Pigeon Key Hist. Park, Inc., 647 So.2d 857, 860 (Fla. 3d DCA 1994). See also Spillis Candela & Partners, Inc. v. Centrust Sav. Bank, 535 So.2d 694, 695 (Fla. 3d DCA 1988).
In the present case we conclude that the bus tour violation was not egregious and was cured by the subsequent public hearings at which the rezoning plan was adopted. It was certainly not a willful violation of the Sunshine Law. Rather, there appeared to be an effort on the part of the School Board to comply with the statute. In this respect we note that the bus trip was hardly a secret. Two members of the media, in fact, were invited along. In addition, the School Board made efforts to assure that the board members were separated spatially, and that no discussions concerning the selection of a plan took place.
Moreover, the open meeting of the School Board held a week after the bus trip lasted in excess of five hours and was extraordinarily well attended by the public. The alternative plans that had been developed were published in advance so that interested members of the public would have an opportunity to review them. After the conclusion of public comment and participation lasting many hours, the various plans, including the one recommended by the superintendent, were vigorously debated by the members of the board. One board member strongly urged the adoption of a plan that was ultimately rejected by the School Board. Finally, the subsequent meeting at which the ultimate plan was finally adopted also featured extensive public comment and debate. It is obvious that the inadvertent Sunshine Law violation resulting from the bus tour was cured by these full, open and independent public hearings. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
ORFINGER and LAWSON, JJ., concur.