IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NATIONAL COUNCIL ON
COMPENSATION
INSURANCE, FLORIDA
OFFICE OF INSURANCE
REGULATION, and DAVID
ALTMAIER, IN HIS OFFICIAL
CAPACITY AS
COMMISSIONER OF THE
FLORIDA OFFICE OF
INSURANCE REGULATION,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-5408 & 1D16-5416

        Appellants,

v.

JAMES F. FEE, JR.,
INDIVIDUALLY,

        Appellee.

_____/

Opinion filed May 9, 2017.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

Thomas J. Maida, James A. McKee, Benjamin J. Grossman, and Nicholas R. Paquette of Foley & Lardner LLP, Tallahassee, for Appellant National Council on Compensation Insurance, Inc.; Shaw P. Stiller, Chief Assistant General Counsel, and C. Timothy Gray and Lacy End-Of-Horn, Assistant General Counsels, for Appellants Florida Office of Insurance Regulation and David Altmaier.

John K. Shubin, Salvatore H. Fasulo, Lauren G. Brunswick, and Mark E. Grafton of Shubin & Bass, P.A., Miami, for Appellee.

Andrea Flynn Mogensen of Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for Amicus Curiae The Florida Press Association, The First Amendment Foundation, and The Associated Press, Inc.

Richard A. Sicking of Touby, Chait & Sicking, P.L., Coral Gables, for Amicus Curiae Florida Professional Firefighters, Inc.

ROWE, J.

The National Council on Compensation Insurance (NCCI) and the Office of Insurance Regulation (OIR) appeal the trial court's order invalidating OIR's approval of a 14.5% increase in workers' compensation insurance rates. For the reasons that follow, we reverse the order in its entirety.

### I. Facts

OIR regulates all insurance activities in Florida, including all activities relating to workers' compensation insurance. Insurance companies writing workers' compensation insurance policies in Florida must seek approval from OIR when setting or changing insurance rates by filing a rate proposal. OIR reviews filings seeking a rate change to determine if the proposed rate is "excessive, inadequate, or unfairly discriminatory . . . in accordance with generally accepted and reasonable actuarial techniques." § 627.062(3)(b), Fla. Stat. (2015). In determining whether the rate proposal should be approved, OIR may examine the statistical data supporting the proposed rate, and it may hold a public hearing. §§ 627.091(2), .101,

2

Fla. Stat. (2015). OIR takes official action on rate filings through its agency head, the Commissioner of Insurance Regulation, currently David Altmaier. See §§ 20.121(3)(a)1., (4), Fla. Stat. (2015).

Insurers have the option of directly filing rate change proposals with OIR or joining a licensed rating organization that will file the proposals on their behalf. § 627.091(4), Fla. Stat. (2015). A rating organization is defined as "every person, other than an authorized insurer, whether located within or outside this state, who has as his or her object or purpose the making of rates, rating plans, or rating systems." § 627.041(3), Fla. Stat. (2015). NCCI is a licensed rating organization operating in more than forty states. And it represents and files rate proposals on behalf of most of the workers' compensation insurers in Florida.[1] Before 1991, the responsibility for establishing rates fell to NCCI's Classification and Ratings Committee. NCCI had such a committee in each state in which it operated, including Florida. These rate-determination committees were composed of representatives of competing workers' compensation insurers who would meet periodically to fix the rates to be submitted for approval to insurance regulators. The committees were disbanded in 1991. Since then, no specific committee at NCCI has been assigned

---

[1] Pursuant to a separate contract with OIR, NCCI also serves as the statistical agent for Florida. In this role, NCCI compiles data regarding the loss, expense, and claims experience of workers' compensation insurance carriers. See § 627.331(3), Fla. Stat. (2015).

responsibility for overseeing, reviewing, or preparing rate filings. In Florida, the responsibility for rate determinations falls to a single employee of NCCI, one of its actuaries – Jay Rosen.

Before filing a rate proposal with OIR, Rosen analyzes certain data to determine whether there is a need for a change in insurance rates. After he decides that a rate change is needed, a Technical Peer Review meeting is convened where other NCCI actuaries challenge Rosen's conclusions in order to assist him in defending his recommended rate proposal. The next step in the process is a Phase II meeting where Rosen provides an overview to other actuaries and members of NCCI's regulatory division explaining how he arrived at his rate proposal. After these meetings, Rosen prepares the documents that are filed with OIR.

## II. Procedural History

NCCI announced in a May 2016 press release that, as a consequence of the supreme court's decision in Castellanos v. Next Door Company, 192 So. 3d 431 (Fla. 2016), which declared unconstitutional the statutory cap on claimants' attorneys' fees in workers' compensation cases, a significant increase in workers' compensation insurance rates would be necessary. Following this announcement, James F. Fee, Jr., an attorney and the sole owner of a law firm that purchases workers' compensation insurance in Florida, requested from NCCI "all pertinent information relating to all NCCI rate and rule filings affecting Florida Workers'

Compensation premiums that were in effect for the calendar years 2006 through 2016." Fee made this request shortly before NCCI submitted a proposal to OIR for a 17.1% increase in the overall statewide workers' compensation insurance rate; he made a second records request after the proposal was submitted. NCCI responded by providing Fee with the records it submitted to OIR with its rate filing.

Before OIR could act on NCCI's rate filing, the supreme court decided Westphal v. City of St. Petersburg, 194 So. 3d 311 (Fla. 2016), holding that the 104-week statutory limit on temporary total disability benefits was unconstitutional, and reinstating a 206-week limitation on these benefits. NCCI responded to the Westphal decision by amending its filing to propose a rate increase of 19.6% to go into effect on October 1, 2016. After NCCI amended its filing, OIR provided notice that it would conduct a public hearing on the proposed rate increase. Fee then made another request to NCCI, seeking any information related to the amended rate filing and any additional information related to his prior requests. Two weeks later, NCCI provided Fee with documents it submitted to OIR associated with its 2016 amended rate filing. Days later, OIR published on the internet all of NCCI's rate filings from 2006 through 2016.

Fee then filed suit against NCCI, OIR, and Commissioner Altmaier and sought to enjoin the public hearing on NCCI's amended rate filing. Fee alleged that (1) NCCI violated the Sunshine Law, section 286.011, Florida Statutes (2015), by

5

failing to provide notice of or a meaningful opportunity to participate in committee meetings where its rate proposals were discussed; (2) the amended rate filing was void ab initio due to violations of the Sunshine Law; (3) NCCI violated section 627.291(1), Florida Statutes, by denying Fee access to records regarding the rate proposal; and (4) NCCI violated the Public Records Act by failing to respond to Fee's records requests.

Despite the pending complaint, the public hearing proceeded as scheduled on August 16, 2016. At the four-hour hearing, every person who filled out a speaker card spoke, including an actuary Fee hired to present testimony in opposition to the proposed rate increase. OIR also allowed for additional commentary by holding open the time for written public comments for an extra seven days. But after reviewing NCCI's rate proposal and considering public comments on the proposal, OIR rejected the proposed 19.6% increase as unjustified. OIR determined that only a 14.5% rate increase was appropriate. NCCI then submitted a revised rate proposal requesting a 14.5% rate increase. On October 5, 2016, Commissioner Altmaier issued a final order approving the revised rate proposal.

The trial court held an evidentiary hearing on Fee's complaint after the Commissioner approved the final order, but before the rate went into effect. After hearing testimony and receiving documentary evidence, the court determined that the order approving the rate increase was void because NCCI and OIR violated the

6

Sunshine Law under three separate statutory provisions: section 627.091(6), Florida Statutes; section 286.011, Florida Statutes; and section 627.093, Florida Statutes. The trial court also concluded that NCCI violated sections 627.291(1) and 119.07, Florida Statutes, when it denied Fee access to its records. NCCI and OIR appeal.

### III. Analysis

We review the trial court's factual findings to determine whether they are supported by competent, substantial evidence. McDougall v. Culver, 3 So. 3d 391, 392 (Fla. 2d DCA 2009). But we review the trial court's interpretation of the law de novo. Liner v. Workers Temp. Staffing, Inc., 900 So. 2d 473, 476 (Fla. 2008) ("We review the statutory interpretation conducted by the trial court to reach this ultimate ruling de novo, while we defer to those factual findings of the trial court that are supported by competent, substantial evidence from the record.").

### A. Alleged Sunshine Law Violations

The trial court found that NCCI and OIR violated Florida's Sunshine Law in three respects. First, the trial court determined that NCCI violated section 627.091(6), Florida Statutes, by conducting meetings of the statutory rate-determination committee outside the sunshine. Second, the trial court found that OIR delegated its authority over rate filings to NCCI, subjecting NCCI's rate proposal activities to the sunshine requirements of section 286.011, Florida Statutes.

7

And third, the trial court concluded that section 627.093, Florida Statutes, requires NCCI to conduct its activities in the sunshine.

### *i. Section 627.091(6), Florida Statutes*

Florida's Sunshine Law finds its origins in section 286.011, Florida Statutes (2015), which provides:

> All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, including meetings with or attended by any person elected to such board or commission, but who has not yet taken office, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.

The Sunshine Law was made part of the Florida Constitution in 1992, in article I, section 24, which requires "[a]ll meetings of any collegial public body" to be open and noticed to the public. By its express terms, the Sunshine Law applies exclusively to governmental bodies and not to private entities. See Op. Att'y Gen. Fla. 16-01 (2016).

Despite this limitation, the Florida Legislature extended the scope of the law to include licensed insurance rating organizations, such as NCCI, under certain specified circumstances:

> Whenever **the committee** of a recognized rating organization with responsibility for workers' compensation and employer's liability insurance rates in this state **meets to discuss the necessity for, or a**

8

**request for, Florida rate increases or decreases, the determination of Florida rates, the rates to be requested, and any other matters pertaining specifically and directly to such Florida rates**, such meetings shall be held in this state and shall be subject to s. 286.011. The committee of such a rating organization shall provide at least 3 weeks' prior notice of such meetings to the office and shall provide at least 14 days' prior notice of such meetings to the public by publication in the Florida Administrative Register.

§ 627.091(6), Fla. Stat. (2015) (emphasis added). This unique extension of the Sunshine Law applies **only** when the rate-determination committee of a rating organization meets to determine workers' compensation insurance rates. NCCI argues, and it is undisputed, that no committee at NCCI has been charged with the responsibility for determining worker's compensation insurance rates in over twenty-five years.[2]

Although NCCI does not entrust a specific committee with responsibility for determining workers' compensation insurance rates in Florida, Fee contends, and the trial court found, that the following configurations of NCCI's and OIR's employees met and acted in place of the rate-determination committee contemplated under the statute and that meetings of those groups were subject to the sunshine:

---

[2] The trial court concluded that NCCI's disbanding of its Classification and Rate Committee in 1991 and its delegation of the responsibility for rate proposals to one person was an attempt to evade the sunshine. But the application of the Sunshine Law does not depend on a party's "intentions, sincerity of purpose or noble motives." IDS Props., Inc. v. Town of Palm Beach, 279 So. 2d 353, 357 (Fla. 4th DCA 1973). Further, it is unclear on this record how the trial court reached the conclusion that NCCI restructured its rate-proposal process in over forty states to avoid compliance with Florida's Sunshine Law.

9

(1) Jay Rosen, in his individual capacity; (2) the Team Peer Review and Phase II meeting participants; (3) Rosen and his staff; and (4) NCCI's and OIR's staff. We conclude that none of these individuals or groups meets the definition of the rate-determination committee under the statute, and thus, none of these meetings was subject to the sunshine.

Fee asserts that Rosen, in his individual capacity, acted in place of the rate-determination committee contemplated by section 627.091(6). This argument ignores the plain language of the statute and the ordinary meaning of the terms within it. See McKenzie Check Advance of Fla., LLC v. Betts, 928 So. 2d 1204, 1208 (Fla. 2006) (explaining that statutory construction starts with an examination of the plain language of the statute); State v. Bodden, 877 So. 2d 680, 685 (Fla. 2004) (observing that it is assumed that the legislature knows the ordinary meaning of words when it enacts a statute). The statute applies only to meetings of a rating organization committee where workers' compensations insurance rates are discussed and determined. A "committee" has been defined as a "subordinate group," not a single person. See *Committee*, Black's Law Dictionary (10th ed. 2014). Moreover, the use of the term "meets" indicates that the statute is designed to apply to a group of people, not a single individual. The multi-person concept of the term "committee" further finds support in well-established precedent construing the Sunshine Law. See Sarasota Citizens for Responsible Gov't v. City of Sarasota, 48 So. 3d

10

755, 764 (Fla. 2010) (explaining that Sunshine Law protections extend to formal and informal meetings only when **two or more** members of the same board or commission meet to deal with a matter on which action will be taken in the future); Office of the Attorney General, <u>Government-In-The-Sunshine Manual</u>, at 18 (2016 ed.) (observing that the Sunshine Law does not "ordinarily apply to an **individual** member of a public board or commission or to public officials who are not board or commission members." (emphasis added)). Thus, under the plain and ordinary meaning of the terms "committee" and "meet," Rosen, in his individual capacity, does not act or "meet" as the statutory rate-determination committee contemplated by section 627.091(6).

The trial court also concluded that NCCI's Team Peer Review and Phase II meetings, the meetings between Rosen and his own staff, and the meetings between NCCI and OIR[3] were the functional equivalent of the rate-determination committee meetings described in section 627.091(6) and that the actions of these groups were subject to the Sunshine Law. The trial court's conclusions are incorrect. With regard to NCCI's internal meetings, the Sunshine Law does not apply because none of the

---

[3] Fee did not allege that the meetings between NCCI and OIR were subject to the sunshine under this provision, and the issue was not listed in the pre-hearing stipulation; thus, the trial court erred by addressing this issue. <u>See</u> <u>LPI/Key W. Assocs., Ltd. v. Beachcomber Jewelers, Inc.</u>, 77 So. 3d 852, 854 (Fla. 3d DCA 2012) ("A pretrial stipulation limiting the issues to be tried is 'binding upon the parties and the trial court, and should be strictly enforced.'") (quoting <u>Broche v. Cohn</u>, 987 So. 2d 124, 127 (Fla. 4th DCA 2008))).

11

participants, other than Rosen, had any authority to determine the worker's compensation insurance rate to be proposed to OIR. See Sarasota Citizens, 48 So. 3d at 762 (holding that the dispositive question for whether the Sunshine Law applies to a committee subordinate to or selected by a traditional governmental authority is whether decision-making authority has been delegated to the committee); Cape Publ'ns, Inc. v. City of Palm Bay, 473 So. 2d 222 (Fla. 5th DCA 1985) (holding that a committee that was formed to supply a city manager with information so that he could properly exercise his duty to select a new police chief was not subject to the Sunshine Law because the committee had no decision-making authority). Instead, these meetings were held solely for the purpose of gathering information. See Molina v. City of Miami, 837 So. 2d 462, 463 (Fla. 3d DCA 2002) ("In short, the committee is nothing more than a meeting of staff members who serve in a fact-finding, advisory capacity to the chief. The Government-in-the-Sunshine Law is not applicable to meetings of staffers serving this function."); Lyon v. Lake Cty., 765 So. 2d 785, 789 (Fla. 5th DCA 2000) ("When a committee has been established for and conducts only information gathering and reporting, the activities of that committee are not subject to section 286.011, Florida Statutes."). And with regard to the meetings between NCCI and OIR, those meetings occurred after NCCI made a rate determination and filed its rate proposal with OIR. In no way could those meetings be considered a meeting of a rate-determination committee of a rating

organization to determine the rates to be filed. Accordingly, neither NCCI's internal meetings nor the meetings between OIR and NCCI was subject to the sunshine pursuant to section 627.091(6).

## *ii. Section 286.011, Florida Statutes*

Fee also argued, and the trial court found, that NCCI violated the Sunshine Law itself. Section 286.011, Florida Statutes (2015), requires "[a]ll meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision" to be held in the sunshine. The Sunshine Law thus applies to governmental bodies and does not apply to private organizations that were not created by a public entity. See Op. Att'y Gen. Fla. 07-27 (2007). However, the sunshine requirements may apply if a public entity has delegated "the performance of its public purpose" to a private entity. Mem'l Hosp.-W. Volusia, Inc. v. News-Journal Corp., 729 So. 2d 373, 382-83 (Fla. 1999).

Fee contends that NCCI was subject to the sunshine because OIR delegated its authority over rate filings to NCCI. However, no evidence in the record supports Fee's argument. OIR approves and disapproves rate filings; it does not make rate filings. Conversely, NCCI and individual insurers have no authority to approve or disapprove rate filings; rather, they are under a statutory mandate to **file** such proposals. §§ 627.091(1), (4), Fla. Stat. (2015). OIR did not delegate to NCCI any

13

authority to carry out an agency function required to be performed in the sunshine. Thus, Fee's argument under section 286.011 fails.

*iii. Section 627.093, Florida Statutes*

The trial court also concluded, without any argument by the parties, that NCCI was subject to the sunshine pursuant to section 627.093, Florida Statutes. This statute provides as follows: "Section 286.011 shall be applicable to every rate filing, approval or disapproval of filing, rating deviation from filing, or appeal from any of these regarding workers' compensation and employer's liability insurances." § 627.093, Fla. Stat. (2015). The plain language of the statute thus extends sunshine requirements only to rate filings; actions taken by OIR subsequent to receiving a rate filing (approval, disapproval or deviation); and appeals of OIR's actions. The only portion of the statute that has any nexus to NCCI's activities in this case is the rate filing itself. And a rate filing is specifically defined by statute to include the following information: (1) "[t]he experience or judgment of the insurer or rating organization"; (2) an "interpretation of any statistical data"; [4] (3) "[t]he experience of other insurers or rating organizations;" or (4) "[a]ny other factors which the insurer or rating organization deems relevant." § 627.091(2), Fla. Stat. (2015). Reading section 627.093 in conjunction with the statutory definition of a rate filing,

---

[4] We note that if OIR requests an examination of the underlying statistical data for a certain rate filing, this information would not be subject to public disclosure due to the exemptions described in section 624.319, Florida Statutes (2015).

14

it is clear that the sunshine requirements of section 627.093 do not apply to NCCI beyond the rate filing itself. It does not extend to NCCI's rate determination activities or to its decision-making process leading to the filing of a rate proposal. The trial court's conclusion to the contrary is incorrect.

## B. Access to Records

Fee also alleges that NCCI failed to fully and completely respond to his records requests, in violation of two statutes: section 627.291, Florida Statutes; and section 119.07, Florida Statutes. We conclude that NCCI was not required to provide Fee with access to its records under either provision.

### i. Section 627.291, Florida Statutes

Fee contends that he is entitled to access NCCI's records pursuant to section 627.291, Florida Statutes (2015), as an insured affected by a rate or aggrieved by a rating system. The statute provides as follows:

> (1) As to workers' compensation and employer's liability insurances, every rating organization and every insurer which makes its own rates shall, within a reasonable time after receiving written request therefor and upon payment of such reasonable charge as it may make, furnish to **any insured affected by a rate made by it, or to the authorized representative of such insured,** all pertinent information as to such rate.

> (2) As to workers' compensation and employer's liability insurances, every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby **any person aggrieved by the application of its rating system** may be heard, in person or by his or her authorized representative, on his or her written request to review the manner **in which such rating system has been**

15

**applied in connection with the insurance afforded him or her.** If the rating organization or insurer fails to grant or rejects such request within 30 days after it is made, the applicant may proceed in the same manner as if his or her application had been rejected. Any party affected by the action of such rating organization or insurer on such request may, within 30 days after written notice of such action, appeal to the office, which may affirm or reverse such action.

§ 627.291, Fla. Stat. (2015) (emphasis added).

Fee asserts that as an insured who would be affected by NCCI's proposed rate increase, he was entitled to access all pertinent records relating to NCCI's rate filing. But the plain language of the statute requires rating organizations to turn over "all pertinent information" to an insured who has been "affected" by a rate. Even assuming that Fee had standing as an insured, he could not have been "affected" by a rate that had yet to go into effect and would never go into effect as OIR ultimately rejected NCCI's request for a 19.6% rate increase. The legislature drafted the statute in the past tense, and it is presumed that the legislature understood this language would limit any rating organization's obligation to turn over rate information to rates that were already in effect. See State v. McNeil, 162 So. 3d 274, 279 (Fla. 5th DCA 2015) (holding that the legislature is presumed to understand the rules of grammar when enacting a statute).

Moreover, all portions of a statute must be read together to achieve a consistent whole. Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). The language contained in section 627.291(2), also written in the past tense,

16

supports a construction of the statute that would require disclosure of information for only rates that are already in effect. Subsection (2) requires rating organizations to provide reasonable means for any person "aggrieved by the application of its rating system" to review the manner in which "such rating system has been applied" to his or her insurance. § 627.291(2), Fla. Stat. (2015). Further, when both subsections are read together, it is apparent that this statute was designed to allow an insured to obtain information about a rate that is in effect or was in effect and to determine whether he has grounds to challenge the application of the rate to him. Because nothing in section 627.291 makes it applicable to pending or rejected rate filings, NCCI was not required to provide records in response to Fee's requests.

### ii. Section 119.07, Florida Statutes

Fee also argues, and the trial court found, that NCCI violated the Public Records Act, which provides that "[i]t is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is a duty of each agency." § 119.01, Fla. Stat. (2015). The Act defines an "agency" to include any private business entity "acting on behalf of any public agency." § 119.011(2), Fla. Stat. (2015). "This broad definition [of agency] serves to ensure that a public agency cannot avoid disclosure under the Act by contractually delegating to a private entity that which otherwise would be an agency responsibility." News & Sun-Sentinel Co. v. Schwab, Twitty

17

& Hanser Architectural Grp., Inc., 596 So. 2d 1029, 1031 (Fla. 1992). Thus, in order to find that NCCI was subject to section 119.07, the trial court was required to determine whether NCCI acted on behalf of a governmental agency. In making this determination, it was necessary for the court to examine multiple factors, including the nine factors outlined in Schwab. 596 So. 2d at 1031. But, here, the trial court expressly declined to apply the Schwab factors and concluded that NCCI was subject to section 119.07.[5] This was error. Economic Dev. Comm'n v. Ellis, 178 So. 3d 118, 121 (Fla. 5th DCA 2015).

## IV. Conclusion

The trial court erred in declaring OIR's final order void and in concluding that NCCI and OIR violated the Sunshine Law. The trial court also erred in determining NCCI violated section 627.291, Florida Statutes, and the Florida Public Records Act, by not providing Fee with access to certain records. Accordingly, we REVERSE the trial court's final order, and REMAND for reinstatement of OIR's final order issued on October 5, 2016, approving a 14.5% increase in the workers' compensation insurance rates.

---

[5] In the brief filed with this Court, neither Fee nor Amicus Florida Press Association attempt to defend the trial court's ruling that NCCI was subject to the Public Records Act. However, when asked at oral argument to concede error on this point, Fee's counsel instead attempted to defend the trial court's ruling by arguing that the trial court did not need to rely on the Schwab factors because of the other relevant statutory provisions dealing with an insured's access to records from a workers' compensation insurance company.

18

KELSEY and JAY, JJ., CONCUR.